## Luther M. Underhill *v.* City of Manchester.

Under an act making towns liable for property destroyed by rioters, which provides that no person shall be entitled to the benefits of the act if the destruction of his property was caused by his illegal or improper conduct, the keeper of a drinking and gambling house, may not be entitled to recover for property destroyed in such house, in a riot growing directly out of a dispute there arising, concerning a gambling transaction, between the persons engaged therein, although he was not personally engaged in such dispute or transaction.

Case, founded on the act of July 15, 1854, "making cities and towns liable for damages caused by mobs or riots."

The following statement of facts was agreed upon by the parties:

The property destroyed consisted of spirituous liquors, the fixtures of a bar, furniture of a refreshment saloon and some other goods, and was destroyed by a mob, in a refreshment saloon kept by the plaintiff, in Manchester, at the time of a firemen's muster, Sept. 14, 1859, under the following circumstances :

A number of persons were in the saloon in the evening, when a dispute arose between them and some of the firemen present in reference to an alleged attempt to pass a counterfeit bill upon some of the persons present.   The parties became loud and noisy and finally got into a fight, which attracted quite a crowd of firemen and others in and around the building, and threats were made by some in the crowd to "clean them out."   The proprietors of the saloon drove out the firemen and others, closed the concern, put out the lights, and fastened the doors.   By the time this was accomplished a large mob of several hundred firemen and other persons had collected who commenced to break open the doors and windows of the saloon, notwithstanding the resistance which was made by the plaintiff and his friends, and destroyed the property which is the subject of this suit.

The plaintiff had not time after the dispute arose to give any notice to the mayor of the city, or to any of the police officers of the mob or riot, before the property was destroyed, and the plaintiff did not then, or at any time before, attempt to give any notice to the mayor or police officers.

During the day and evening of the riot and at the time said bill was offered, spirituous liquors were openly sold in the front room of the saloon, without license, with the plaintiff's knowledge, from which sales he received certain profits, and, at the same time, the back room of the saloon was openly used for the purpose of gambling with like knowledge on the part of the plaintiff, he receiving pay for such use, and said bill which was offered to be passed, was offered at a gambling table.   If it is material that the offer to pass the bill was made by one of the firemen, or by the proprietor of the gambling table, the fact that it was so offered by one or the other of said parties is admitted for the purposes of this case.

If, upon the foregoing statement, the court should be of opinion that the action could not be maintained the plaintiff was to become nonsuit, but if it could be maintained an auditor was to be appointed to assess the damages.

*I. A. Eastman*, for the plaintiff.

*S. N. Bell*, for the defendant, cited *Lord* v. *Chadbourne*, 42 Me. 425 ; *Holman* v. *Johnson*, Cowp. 341 ; *Fortunich* v. *New Orleans*, 14 La. An. 115.

DOE, J.   The 1st and 2d sections of the act of July 15, 1854, entitled "An Act making cities and towns liable for damages caused by mobs or riots," Laws 1854, ch. 1519, are as follows :

Section 1. *Be it enacted*, &c.   That whenever persons unlawfully,

riotously and tumultuously assembled, shall injure or destroy any property, real or personal, the city or town within the limits of which such property may be situated, shall be liable to indemnify the owner thereof for the property so injured or destroyed, to be recovered in an action on the case.

Sec. 2. No person or persons shall be entitled to the benefits of this act, if it shall appear that the destruction of his or their property was caused by his or their illegal or improper conduct, nor unless it be made to appear that he or they, upon the knowledge had of the intention or attempt to destroy his or their property, or to collect a mob for such purpose, and sufficient time intervening, gave notice thereof to the mayor of the city, selectmen of the town, or a justice of the peace of the city or town in which such property may be situated.

A question presented by the case is, whether the destruction of the plaintiff's property was caused by his illegal or improper conduct, within the meaning of those terms as used in the statute.   He kept a saloon, in the front room of which spirituous liquors were illegally and openly sold with his knowledge, from which traffic he received certain profits, and the back room was openly used for gambling with his knowledge, he receiving pay for such use.   A bank bill was offered to be passed at a gambling table in the back room, the bill was alleged to be counterfeit, a dispute arose, the dispute grew into an assault, and the assault into a riot, in which his property in the saloon was destroyed.   It is to be inferred that the bill was offered to satisfy a loss incurred in gambling at the time the dispute arose.   What part the plaintiff personally took in selling liquor, or in gambling, does not definitely appear, but, so far as this case is concerned, he is clearly responsible for everything which can, in law, be regarded as a consequence of the selling or gambling in the saloon which he kept.   By openly keeping a saloon for such purposes, he invited such company as usually frequent such places, solicited them to gamble, and offered them a stimulus highly promotive of brawls, affrays, riots and all other crimes.   Both branches of his business were entirely criminal.

The rioters are liable to the plaintiff for the damage done by them. His property, though solely used in violation of law, could not be lawfully destroyed except under process of law.   *Brown* v. *Perkins*, 22 Law Reporter, 98; *Woodman* v. *Hubbard*, 25 N. H. 67.   But he seeks compensation from the city, not at common law for a trespass committed by the city upon his goods or estate, but under a statute passed for a special purpose.

The plaintiff's conduct was illegal and improper.   Was the destruction of his property caused by his conduct?   The proximate, not the remote, cause is regarded, but, with no standard of measure, it is often difficult to determine what is proximate and what remote.   Upon claims for general, as well as for special, damages, in tort and in contract at common law, and in actions under statutes, the question often arises whether a loss or injury sustained by the plaintiff was caused by an act or neglect, for which it is admitted that the defendant is responsible.   In *Powell* v. *Salisbury*, 2 Y. & J. 391, the plaintiff recovered for the loss

of his horses which passed through a fence which the defendant was bound to maintain, into the defendant's premises where they were killed by the falling of a hay stack.   In *Lynch* v. *Nurdin*, 1 Ad. & E. (N. S.) 29, the defendant was held liable for an injury received by a child while playing with the defendant's horse and cart which had been left in the street.   In *Bennett* v. *Lockwood*, 20 Wend. 223, the plaintiffs recovered for time spent and expenses incurred by them in searching for their horse and wagon, which had been wrongfully taken from a bailee by the defendant.   1 Ch. Pl. 395, 396, 398 ; 2 Gr. Ev. secs. 254,256, 268 a ; Sedgwick on Damages, ch. 3 ; *Woodbury* v. *Jones*, 44 N. H. 206 ; *Griffin* v. *Sanbornton*, id. 246.   When both parties are in fault the rule is sometimes more easily applied.   1 Smith's L. Cases, 132 b ; *Davies* v. *Mann*, 10 M. & W. 546 ; *Greenland* v. *Chaplin*, 5 W. H. & G. 243 and note ; *Tisdale* v. *Norton*, 8 Met. 388 ; *Robinson* v. *Cone*, 22 Vt. 213 ; *Trow* v. *R. R.*, 24 Vt. 487 ; *Hyde* v. *Jamaica*, 27 Vt. 443 ; *Murch* v. *R. R.*, 29 N. H. 9, 43.   When the claim is for damages caused by a breach of contract, it is said that the defendant is liable for those damages only which both parties may be fairly supposed to have contemplated at the time they entered into the agreement as likely to result from a breach of it.   Sedgwick on Damages, 58. *Saxton* v. *Bacon*, 31 Vt. 540, was an action brought under a statute which provided that a person, not keeping in repair his portion of a division fence, should be liable for all damages suffered by an adjoining owner in consequence of such neglect.   The declaration was, that the parties owned adjoining farms, that the plaintiff's horses passed over the defendant's insufficient division fence into the defendant's premises, where they were gored by the defendant's bull.   It was held to be a question of fact whether the injury to the horses was the natural consequence of the defendant's neglect to maintain his portion of the fence, and such as, under the circumstances, he might reasonably have expected would follow therefrom.

Where, in statutes giving rights of action, as against hundreds for robberies and damage done by mobs, against towns for defective roads, against counties or sheriffs for insufficient jails, against persons flowing land under mill acts, against proprietors or occupants of land for deficient fences, against owners or keepers of dogs, such terms have been used as " caused by," " occasioned by," " arising from," " by means of," " happening by reason of," " in consequence of," and the like,—the principles of the common law, relating to remoteness of cause, have been adopted. Sedgwick on Damages, 84.   In such cases, and in tort and contract at common law, such terms as " efficient and producing cause," " immediate direct and necessary result," and " legal, natural and proximate consequence," are used as expressions indicating the rule, but they have evidently been interpreted strictly or liberally according to the nature of particular cases.   Where the act or omission complained of is greatly to be censured and of evil example, the law does not attempt nicely to limit the amount of reparation, but pursues the wrong-doer with severity, and extends the line of relief so as to embrace consequences some-

what remote from the original transaction.  Sedgwick on Damages, 81.

In this case, there is no remoteness of time or place.  The riot was one continuous transaction commencing and ending in the plaintiff's saloon, and originating in, and terminating with, his illegal business.  It was begun by persons who were invited by him, through his open course of dealing and the public character of his rooms, to meet for the sole purpose of giving him profits from violations of law there to be committed.

If they had extended the destruction to property of innocent persons, not in pursuance and furtherance of a design entertained in common by the plaintiff and themselves, he might not, under some circumstances, be liable for damages so remote and consequential.  *Vicars* v. *Wilcocks,* 8 East, 1; *Crain* v. *Petrie,* 6 Hill, 522; 1 Hawk. P. C. ch. 31, sec. 46, note 3; Wharton Cr. Law, 379; 1 Saund. Pl. & Ev. 749; 2 Gr. Ev. sec. 621.  Even in such case, however, if the usual circumstances appeared, it might deserve consideration whether he could not reasonably have expected that such a result would follow his convoking disorderly and lawless people and inciting them to gamble, especially if he abetted them in drinking excessive quantities of modern intoxicating liquor.  Upon such conditions it might be difficult to set a limit to the consequences which a person of ordinary care and prudence would anticipate as likely to ensue, or to determine what calamitous events would not be according to the order of nature.  Notwithstanding the dearth of exact precedent which there has been so frequent opportunity to establish, it might not be futile to enquire why one held liable for damage done by dangerous animals belonging to, or kept by, himself, or carelessly conducted by him into a populous town, should not also be liable for damage done by men whom he has drawn together in the same place, and aided in making irrational, uncontrollable, and dangerous; why one who knowingly aids in depriving others of reason should be allowed to shield himself from responsibility for their acts with any rule of agency founded upon a distinction between soundness and unsoundness of mind, or between the human and the brute creation; why the principle upon which one is accountable civilly for his own acts committed in a state of intoxication, and also accountable criminally when the intoxication is voluntary, would not render others equally amenable who had negligently contributed to such intoxication; why the keeper of a drinking and gambling house should not be regarded as one who negligently sets mechanical forces in operation beyond his power to stop or safely direct, or carelessly puts destructive implements or materials in situations where they are likely to produce mischief; and why such keeper would not come even within the criminal law applicable to those engaged in the wilful commission of unlawful acts which necessarily tend to raise tumults and quarrels, and consequently cannot but be attended with the danger of personal hurt to some one or other.  It might be found that the salutary general principles, which provide redress and penalties for negligence and illegal transactions, have not been resorted to in very many instances in which they were available, whereby a misapprehension has prevailed

that there was a defect in this branch of the law.    1 Saund. Pl. & Ev. 755,757 ; 1 Arch. N. P. 560 ; Sedgwick on Damages, 90, note‡ ; 1 Hawk. P. C. ch. 29, sec. 10, ch. 31, sec. 8, 42 ; 1 Bennett & Heard L. Cr. Cases, 42, 58 ; *Jackson* v. *Smithson*, 15 M. & W. 563 ; *Milligan* v. *Wedge*, 12 Ad. & E. 737 ; *Butterfield* v. *Forrester*, 11 East, 60 ; *Holly* v. *B. Gas L. Co.* 8 Gray, 123 ; *Winn* v. *Lowell*, 1 Allen, 177 ; *S. F. Bridge* v. *Fisk*, 23 N. H. 171 ; *George* v. *Fisk*, 32 N. H. 32 ; *Donoghue* v. *County*, 2 Barr, 230 ; *Lavery* v. *County*, id. 231.    In *Scott* v. *Shepherd*, 3 Wils. 403, S. C. 2 W. Bl. 892, where an action was maintained against one who threw into a market house, a lighted squib, which was there thrown by others, to avoid injury to themselves, until it hit the plaintiff, the question was  whether the remedy was in trespass or case—whether the damage was immediate and direct or consequential.    It was not doubted by any of the judges that the injury was caused by the defendant so that he was liable in some form of action.    In *Guille* v. *Swan*, 19 Johns. 381, where a aeronaut involuntarily descended into a garden, and a crowd of people, who were following him, broke into the garden through the fences, beating down vegetables and flowers, it was held, that, having placed himself in such a position that he was liable to descend anywhere, and his descent being an occurrence which would ordinarily and naturally draw a crowd about him, he ought to have foreseen, and must be responsible for, all the damage done by the crowd, and it was said that to render one man liable in trespass for the acts of others, it must appear, either that they acted in concert, or that the act of the individual sought to be charged, ordinarily and naturally produced the acts of the others.

But, whether it could, or could not, be said that the keeper of a drinking or gambling house, caused damage done, under ordinary or extraordinary circumstances, by his customers to third persons, the facts in the present case tend to show negligence on the part of the plaintiff in exposing his own property to the action of dangerous elements.    The tools of his occupation  and the articles of his  trade were evidently involved in more immediate danger than the property of his neighbors. His negligence would not justify his visitors in the destruction which they wrought, *Davies* v. *Mann*, 10 M. & W. 546 ; but he stands in the position of one who claims, from a town, under a statute, damages for an injury resulting from a defect  in a highway,  to this extent, certainly, that he cannot recover if, by the exercise of ordinary care and  prudence, he would have avoided the injury.    *Winship* v. *Enfield*, 42 N. H. 197, 213, 214.    There may be reasons for not extending to towns, in cases of this character, the defence which they have in highway cases— that there was no negligence on their part, *Palmer* v. *Portsmouth*, 43 N. H. 265 ; but there can be no reason for not requiring such care of the plaintiff as is generally necessary in other cases.    Our statute relating to highways does not contain an express exception as to damage caused by a traveller's illegal or improper conduct, but, its object being to impose duties of diligence upon towns, and not to provide a remedy for damages sustained by any man through his own wrong, it has been construed accordingly.    *Wood* v. *Waterville*, 4 Mass. 422 ; *Farnum*

v. *Concord*, 2 N. H. 392. And if the second section of the act relating to mobs and riots had been omitted, and if gambling and liquor selling were lawful, the question would still have arisen, whether the character of the concourse most likely to be attracted, by the plaintiff's general invitation, to his saloon, and the excitement which his occupation tended to produce, constituted a probable and apparent danger to the property used in carrying on his business—a danger which it was negligence in him to create or introduce among his chattels; and whether, as between the plaintiff and the city, such negligent use would preclude his maintaining this action.

If a traveller knows, or is in fault for not knowing, the viciousness of a horse or the defect in a carriage or harness which he is using, he cannot recover for an injury which he would not have received if there had been no such viciousness or defect. Negligence, on his part, in anything which directly conduces to a detriment which, without such negligence, would not have happened, is so far regarded as the cause as to bar him from alleging that there was any other cause. Such negligence may be in manner of loading freight or passengers, or in the quality or condition of freight or passengers conveyed by a carrier. If one had engaged in the business of transporting the plaintiff's customers from his saloon to another of similar character, and, during a passage, his vehicle had been overturned by such an outbreak among the passengers, as that which occurred in the plaintiff's saloon, combined with a defect in the highway, and if, without such outbreak or defect, the vehicle would have gone safely, the carrier, in an action brought by himself for the defect, would doubtless meet the objection that he was negligent in taking such a load.

It is a part of the general system of the law, that remedy is not given for a loss caused by want of ordinary care in the loser. In *Fero* v. *B. & S. L. R. R.*, 22 N. Y. 209, 214, the plaintiff's house was burned by sparks driven by the wind, from the defendant's locomotive, through an open door of the house, and it was, of course, held that the plaintiff was bound to use such care in protecting his premises as a person of ordinary prudence would have employed under the circumstances, and that, if through his neglect, in not causing the door to be shut, his house was consumed, he could not recover. In that case the plaintiff did not open the door for the purpose of allowing the sparks to enter.

There is another consideration entitled to great weight. The natural custom always pursued of looking to the object of a statute, in determining the meaning and application of its language, finally grew into a settled and formal rule of construction. In *Dillon* v. *Fraine*, Popham, 70, 79, S. C. 1 Rep. 114, 123, 138, Popham, C. J., after enumerating the defects in the law prior to a certain statute, said: "These were the great mischiefs that were before the making of the statute, and these were the things for which the statute intended to provide remedy, and if the exposition shall be as hath been on the other side, these mischiefs shall be on every part more mischievous by much than it was before the making of the statute, and that in such a manner, that it shall be impossible to help any of them but by Parliament; whereas always the good

and true construction of a statute is to constrain it, so that it shall give remedy to the mischief which was before, and not to make it more mischievous." In *Heydon's Case*, 3 Rep. 7, 8, it was resolved that for the sure and true interpretation of all statutes in general (be they penal or beneficial, restrictive or enlarging of the common law,) four things are to be discerned and considered,—1, the common law before the making of the act; 2, the mischief and defect for which the common law did not provide; 3, the remedy appointed by Parliament; 4, the true reason of the remedy; and that then the office of the court is always to make such construction as shall suppress the mischief and advance the remedy. The rule is more concisely stated in Co. Litt. 381 b, and in 1 Bl. Comm. 87. Under the statutes of Winchester and Winton, in consideration of their purpose appearing from other statutes and from the common law, hundreds were not charged for robberies committed in houses or in the night time, although such robberies were not expressly excepted in the statute. 7 Rep. 6, 7; Cro. Eliz. 753; Cro. Jac. 496.

The principle of making all the members of a territorial or numerical division, sureties for each other in criminal matters, which has been a basis of legislation in many nations from very early times, comes down to us through the decennaries of Alfred, the statutes of hue and cry, and all the acts of Parliament making the hundred liable for offences committed in its district. 1 Bl. Comm. 114, 115, 116; 3 id 161; 4 id. 245, 293, 294; *Ratcliffe* v. *Eden*, Cowp. 485, 488; 2 Hawk. P. C. ch. 12, secs. 2, 3, 7; *Pinkney* v. *Rutland*, 2 Saund. (Wm's ed.) 374, and cases cited; 1 Kemble's Saxons in England, ch. IX.

The object of the statute of 1854, evident in itself, as well as shown by the history of similar laws, is, to prevent and suppress riots. The course taken is, first and chiefly, punitive, in making the loss of property destroyed by mobs, a charge upon the town treasuries, thereby joining the personal interest of tax payers with the official duty of the local authorities, and arraying both against rioters, with a new motive to discover, discourage, overawe, and overpower all riotous proceedings and tendencies; secondly, remunerative, in encouraging every one to oppose mobs by giving indemnity for property destroyed in consequence of efforts to preserve order. The act is not founded solely upon the theory of insurance, with taxes as premiums. The end to be accomplished is not merely compensation for loss, but prevention of loss, with compulsory compensation as the incentive means.

Riots being the mischief to be remedied, the statute is to be construed, if possible, so as to suppress the mischief. The business in which the plaintiff was engaged is a fruitful source of riots, and all disturbances of the peace, likely to expand into riots, and, to relieve persons so employed from risks incident to their calling, would tend to foster riots rather than to prevent them.

That the destruction of the plaintiff's property was caused by his own illegal conduct, is a conclusion, partly perhaps of fact, but justified by law, and not easily avoided. The action cannot be maintained, and there must be a

*Nonsuit.*