## CHERBONNIER v. RAFALOVICH.

### No. A–5945.

United States District Court
D. Alaska, Third Division.
March 16, 1950.

McCutcheon & Nesbett, Anchorage, Alaska, for plaintiff.

Hellenthal & Cottis, Anchorage, Alaska, for defendants.

DIMOND, District Judge.

On motion to dismiss the complaint because it fails to state a cause of action against the defendants. Granted.

The defendants keep a saloon in the City of Anchorage, known as the Canteen Bar, in which food also is served.

The plaintiff in his complaint alleges that while he was eating in the defendants' saloon and cafe on October 5, 1949, without provocation on his part, one Robert Hobson, who was then in a drunken condition, threatened plaintiff with bodily harm and that immediately thereafter defendants' servant gave Hobson more alcoholic drinks; that thereafter, and while plaintiff was still eating, Hobson, without provocation or notice, maliciously attacked plaintiff and severely injured him; that the attack was made with full knowledge of defendants' servant; that the latter made no attempt to protect plaintiff or to give warning, but in fact, aggravated the situation by serving Hobson drinks while Hobson was in an intoxicated condition. For physical injuries sustained, the plaintiff asks $25,000 in damages.

Under the laws of Alaska, it is criminal to give or sell liquor to any intoxicated person. Sec. 35-4-15, A.C.L.A. 1949.

The applicability of the common law in Alaska, aside from constitutional mandate, is to be now found in Section 2-1-2, A.C.L.A. 1949, reading as follows:

"So much of the common law as is applicable and not inconsistent with the Constitution of the United States or with any law passed or to be passed by Congress or the Legislature of Alaska is adopted and declared to be law in the Territory of Alaska. (C.L.A. 1913, § 796; am.L. 1933, ch. 15, § 1, p. 47; C.L.A. 1933, § 3271.)"

The above quoted provision of law is based upon a portion of the Act of June 6, 1900, 31 Stat. 552, establishing a civil government for Alaska.

■ The general common law rule as to the liability of the vendor of intoxicating liquor for an act done by the drinker of the liquor while the latter is in an intoxicated condition, is that such an act does not constitute an actionable tort against the vendor, and that in the sale or giving of the liquor the vendor is not so guilty of culpable negligence as to give to anyone injured by the drinker a right of action against the vendor. Hitson v. Dwyer, 1944, 61 Cal.App.2d 803, 143 P.2d 952; Howlett v. Doglio, 1949, 402 Ill. 311, 83 N.E.2d 708, 6 A.L.R.2d 790; Seibel v. Leach, 1939, 233 Wis. 66, 288 N.W. 774. The reason usually given for this rule is that the drinking of the liquor is the proximate cause of the injury, not the selling of it.

But the cases on the subject are not in harmony and opinions can be found in which it is declared that the common law rule is otherwise than as above stated. Apparently, one of the earliest American cases allowing the plaintiff to recover from the vendor of liquor for an injury received from the recipient of the liquor while under its influence is Rommel v. Schambacher, 1888, 120 Pa. 579, 11 A. 779, 6 Am.St.Rep. 732. In that case the court held the saloonkeeper liable, stating that plaintiff should recover as "a plain matter of common law and good sense". No cases were cited in support of this statement, and Pennsylvania at the time had a statute on which recovery could be predicated. In an annotation in 36 Am.St.Rep. 807, 830, it is stated that this case and the case of Harrison v. Berkley, S.C. 1847, 1 Strob. 525, 47 Am.Dec. 578— a case allowing a slave owner to recover from a saloonkeeper for the loss of his property when his slave died from drinking the liquor he had purchased—were the only cases up to that time in which recovery from the liquor dealer had been upheld

without a statute so providing. See, also, Tarwater v. Atlantic Co., 1940, 176 Tenn. 510, 144 S.W.2d 746.

Most of the later cases holding the saloon-keeper liable apparently rely to some degree on Rommel v. Schambacher, supra, as authority. One of the most recent of these cases is Peck v. Gerber, 1936, 154 Or. 126, 59 P.2d 675, 106 A.L.R. 996, in which it appears that the plaintiff was assaulted in the saloon by another customer, the latter being a regular customer who was known to the saloonkeeper to be a troublemaker. No employee having the duty of maintaining order was working at the time. The court held the saloonkeeper liable, because he was negligent, and expressed the view that he did not use the care required of the ordinarily prudent man in maintaining order for the safety of his guests. The court stated that the standard or care does not vary, but that the ordinarily prudent man exercises care commensurate with the dangers to be avoided and the likelihood of danger to others, and, therefore, the jury was justified in finding that ordinary prudence had not been used. There is evidently no statute in Oregon on which recovery could have been based, although the cases principally relied upon for support are from jurisdictions having statutes providing for recovery under such circumstances. Other cases in which the defendant saloonkeeper was held liable under circumstances somewhat similar to those in the case at hand are Mastad v. Swedish Brethren, 1901, 83 Minn. 40, 85 N.W. 913, 53 L.R.A. 803, 85 Am.St.Rep. 446, where liquor was sold in violation of the law (not passed upon) and vendor knew drinker was quarrelsome and violent, and Molloy v. Coletti, 1921, 114 Misc. 177, 186 N.Y.S. 730. Both of these cases rely on Rommel v. Schambacher, supra, as authority.

Another Minnesota case may be mentioned although the facts are somewhat different. In Curran v. Olson et al., 1903, 88 Minn. 307, 92 N.W. 1124, 60 L.R.A. 733, 97 Am.St.Rep. 517, the plaintiff fell asleep and a third person bought alcohol from defendants' servant and used it to set fire to plaintiff's foot. This man had done the same thing to others on two previous occasions. The court said, "the bartender knew, or might have known by the exercise of the slightest care, what the alcohol was to be used for, and could have prevented the injury to the plaintiff." The defendants were held liable upon the ground that "the defendants were bound to use reasonable care to protect their guests and patrons from injury at the hands of vicious or lawless persons whom they knowingly permitted to be in and about their saloon."

A discussion of the general subject is to be found in the case of Underhill v. City of Manchester, 45 N.H. 214, opinion by Justice Doe. In that opinion, Justice Doe comments upon the offering to drinkers of "a stimulus highly promotive of brawls, affrays, riots and all other crimes". 45 N.H. at page 216. 45 N.H. on page 218 is propounded the "mystery wrapped in a riddle inside of an enigma" as to the liability of the vendor, without the supplying of any answer, as follows: "Notwithstanding the dearth of exact precedent which there has been so frequent opportunity to establish, it might not be futile to enquire why one held liable for damage done by dangerous animals belonging to, or kept by, himself, or carelessly conducted by him into a populous town, should not also be liable for damage done by men whom he has drawn together in the same place, and aided in making irrational, uncontrollable, and dangerous; why one who knowingly aids in depriving others of reason should be allowed to shield himself from responsibility for their acts with any rule of agency founded upon a distinction between soundness and unsoundness of mind, or between the human and the brute creation; why the principle upon which one is accountable civilly for his own acts committed in a state of intoxication, and also accountable criminally when the intoxication is voluntary, would not render others equally amenable who had negligently contributed to such intoxication; why the keeper of a drinking and gambling house should not be regarded as one who negligently sets mechanical forces in operation beyond his power to stop or safely direct, or carelessly puts destructive implements or materials in situations where they are likely to produce mis-

chief; and why such keeper would not come even within the criminal law applicable to those engaged in the wilful commission of unlawful acts which necessarily tend to raise tumults and quarrels, and consequently cannot but be attended with the danger of personal hurt to someone or other."

Of course, as is apparent from a reading of the Underhill case, the action was one against the City for the destruction of the saloon keeper's property in a riot, under a statute making the cities and towns of the State of New Hampshire liable for damages caused by mobs or riots. In that case, the sale of liquor and the gambling operations carried on by the plaintiff were totally illicit and the Court held that the plaintiff's loss was caused by his own illegal conduct and therefore denied relief.

The present trend is apparently toward holding the defendant saloonkeeper liable for lawless acts occurring in the saloon. It is said in 30 Am.Jur. 574 that: "The better reason appears to favor placing on the proprietor the duty of seeing to it that the patron is not injured either by those in his employ or by drunken or vicious men whom he may choose to harbor. Further, a guest or patron of such a place has a right to rely on the belief that he is in an orderly house and that the operator, personally or by his delegated representative, is exercising reasonable care to the end that the doings of the house shall be orderly".

 Recognizing the weight of the common law, made applicable to Alaska by Act of Congress, it would seem that the rule as to the non-liability of the vendor of intoxicating liquor for torts committed by the drinker of liquor while the latter is intoxicated, without more, generally prevails. The declaration in Rommel v. Schambacher, supra, that the common law rule is otherwise, cannot be sustained upon examination of the authorities. But the doctrine of non-liability may not justly override other rules of law under which the proprietor of a saloon should be held liable for negligence. We have seen an applica-

tion of those rules in Peck v. Gerber, Mastad v. Swedish Brethren and Curran v. Olson, supra. Even Justice Doe, with all of his great learning and ability,* did not venture to say that under any and all circumstances, liability should be fastened on the saloonkeeper.

In the case at bar, the complaint lacks any averment to the effect that the defendants' servant had any knowledge of Hobson's threat to do the plaintiff bodily harm before the last of the drinks of intoxicating liquor was served to Hobson, nor is there any other allegation in the complaint showing that Hobson was known to be of a violent disposition or likely to commit an assault and battery while under the influence of liquor. The fact that the bartender may have sold Hobson a drink while the latter was intoxicated, standing alone, is not sufficient to make the bartender or his master liable.

The motion to dismiss the complaint because it does not state a cause of action against the defendants is granted, and plaintiff, upon application, may have leave to plead over.

---

* See 63 Harvard Law Review, page 520, Jan. 1950.