## HEDRICK v. FRATERNAL ORDER OF FISHERMEN OF ALASKA, Inc. et al.

### No. A-6978.

United States District Court
D. Alaska, Third Division.
April 8, 1952.

Bailey E. Bell, William H. Sanders, Anchorage, Alaska, for plaintiff.

Plummer & Arnell, Anchorage, Alaska, for Frat. Order of Fishermen of Alaska, Inc.

George M. McLaughlin, Anchorage, Alaska, for defendant Jackson.

FOLTA, District Judge.

Plaintiff seeks to recover damages for personal injuries sustained as a result of an assault made upon him December 26, 1949, in the barroom of the corporate defendant by its co-defendant 'Jackson, who was a patron. Plaintiff was struck over the left eye, his glasses broken and pieces thereof embedded in the eye, resulting in a painful injury which totally disabled him for 11 weeks; caused a 7% loss of vision in the left eye, although no noticeable loss in total vision, and a slight loss in depth perception. The corporate defendant paid the medical and hospital expenses.

It appears that shortly after the defendant Jackson entered the premises he kissed one of the entertainers; that at about the same time plaintiff requested of the same entertainer that a certain piece be played; that immediately defendant Jackson without any warning struck the plaintiff and made a hasty exit. It further appears that the defendant Jackson and plaintiff were strangers to each other. No witness except the entertainer, according to the testimony, saw the assault. All the remaining witnesses testified in effect that they heard a thud, looked and saw plaintiff on the floor; that there were exclamations accusing the defendant Jackson who was making a precipitate exit. Although there was at least one bartender on duty, an employee on the floor and a third at the door, Jackson made his escape without interception.

Jackson's default was not entered and he was permitted to file an answer denying the allegations of the complaint at a late stage of the trial. He produced one witness who testified that Jackson was pushed by the plaintiff with such force that he lost his balance and fell and that while he was in the act of rising, the plaintiff was about to strike him, but was in turn struck by Jackson. All the surrounding facts of the circumstances brand this story as false and I so find. The defendant Jackson failed to take the stand.

I find that the assault was malicious, wanton and unprovoked and conclude that the plaintiff is entitled to recover from defendant Jackson $1544.40 for loss of wages for 11 weeks; $3500 for impairment of his vision; $2500 for pain and suffering and $2000 in punitive damages.

The liability of the corporate defendant, hereinafter referred to as the defendant, was strenuously contested. The plaintiff contends that Jackson was a vicious and belligerent person; that this was known to the defendant and that, therefore, the defendant should have excluded or removed

him from the premises for the protection of its patrons and that its failure to do so was negligence for which it should be held liable.

The evidence on this version of the case may be summarized as follows: The plaintiff's wife testified that she heard the bartender Henson, since deceased, remark to the other bartender "Here comes trouble"; that she turned in the direction in which he was looking and saw Jackson; that shortly afterward she heard a thud and saw her husband on the floor. Plaintiff contends that this remark is in itself sufficient to show knowledge on the part of the defendant of 'Jackson's character. On the other hand, although others were apparently within hearing distance, no witness testified that he heard such a remark. Moreover, no other witness except the plaintiff testified that more than one bartender was on duty and Henson, to whom the remark is attributed, died before this action was commenced. Mrs. Hedrick's testimony is further attacked on the ground that being hard of hearing, she would be the last person to hear the remark. She explained, however, that her hearing did not become impaired until April 1950 after an airplane trip, but was compelled to admit that she had not sought medical advice.

I find that the defendant Jackson was not visibly intoxicated; was not sold a drink in the premises and remained there only about 5 minutes.

█ The crucial question is whether the remark, if any, is sufficient proof to support recovery. Under the authorities, including those cited by the plaintiff, the proof must show the following:

(1) That the defendant Jackson was a vicious, belligerent or disorderly person,

(2) That the corporate defendant had knowledge thereof, and

(3) That the defendant, after discovering Jackson's presence, had an adequate opportunity to remove or eject him.

I find that the defendant had ample opportunity to deny the defendant Jackson admittance.

In evaluating the testimony of Mrs. Hedrick, several matters having a bearing on her credibility must be taken into consideration. She is directly interested in the outcome of the action; no other witness heard the remark testified to by her; the preponderance of the evidence is that Henson was the only bartender on duty; her testimony in rebuttal as to her hearing is incredible for it is inconceivable that one who suddenly finds his hearing impaired will not seek medical advice even after the lapse of two years. In this posture of the case it was incumbent on the plaintiff to rehabilitate the witness by showing if such was the case that she had communicated the fact that the remark referred to had been made immediately after the assault, or at least at the time that a representative of the defendant called on the plaintiff to offer to pay his medical and hospital expenses or before Henson's death or before consulting counsel. Moreover, although the character of the defendant Jackson was, particularly in argument, painted in the blackest of colors, such a characterization is somewhat inconsistent with the plaintiff's failure to have him prosecuted and with the 18 months' delay in bringing the action. Another fact that is of considerable significance, is the absence of any evidence that Jackson had ever been in any fight or conducted himself in a disorderly manner or had to be ejected from any barroom or bore the reputation of a vicious, belligerent, quarrelsome or disorderly person. The testimony shows that Jackson has resided in Anchorage for several years. It is incredible that if he bore such a reputation, he could have frequented the numerous bars and honky-tonks that infest this area without acquiring a police record in the process.

I am not oblivious to the force of the argument that a vicious assault of this kind is in itself evidence of the character ascribed to Jackson, and that upon an occurrence of this kind in a barroom there is an attempt to suppress all evidence prejudicial to the liquor business and that although it is next to impossible to induce anyone to testify to the bad character of a scoundrel, it is always possible to obtain evidence that his character is good notwithstanding that it is bad. Undoubtedly, liquor should be

made to pay for all injuries resulting directly or indirectly from its use, but unfortunately the view that prevails is that each person, regardless of his innocence or how great the burden, should himself bear the consequences and cost of injuries inflicted by one whom liquor has deprived of reason, without recourse to the maker, the purveyor or to an indemnity fund derived from a tax on liquor for that specific purpose.

■ Upon a consideration of the entire evidence, I am convinced that under the authorities the proof here is insufficient to show that the defendant Jackson was a violent, quarrelsome, belligerent or disorderly person and that the corporate defendant had knowledge thereof or of facts from which such knowledge could be inferred. Cherbonnier v. Rafalovich, 88 F.Supp. 900, 12 Alaska 634.