[S. F. No. 2135.    Department Two.—March 31, 1900.]

In the Matter of the Estate of OLIVE JANE WICKES, Deceased. JAMES M. SHANNON, Appellant, v. ANNETTE P. CLARK, Executrix, etc., Respondent.

HUSBAND AND WIFE—DOMICILE OF WIFE—STATUTES—COMMON LAW.—In every case in which the wife is not expressly allowed by the statutes of this state to acquire a separate domicile from her husband, the common-law rule applies that the domicile of the wife is the domicile of the husband, although they may be in fact living separately and apart from each other, and in different jurisdictions.

ID.—JURISDICTION OF ESTATE OF DECEASED WIFE—PROBATE OF WILL—COUNTY OF HUSBAND'S DOMICILE.—The county in which a deceased wife lived and left property at the time of her death, if she left a surviving husband domiciled in another county, has no jurisdiction over her estate; and her will can be probated only in the county of her husband's domicile.

APPEAL from an order of the Superior Court of Alameda County refusing to admit a will to probate. S. P. Hall, Judge.

The facts are stated in the opinion of the court.

Z. N. Goldsby, P. F. Dunne, and B. H. Griffins, for Appellant.

The wife had her home in Oakland, and there is no doubt of her intention to make it such. Her home constituted her domi-

cile. (Story on Conflict of Laws, sec. 41; *Doucet v. Geoghegan,* L. R. 9 Ch. Div. 456; *Whicker v. Hume,* 7 H. L. Cas. 124; *Hoyt v. Brown,* 1 Wall. Jr. 262; *Venable v. Paulding,* 19 Minn. 490; *Smith v. Croom,* 7 Fla. 81.) The theoretic identity of domicile between husband and wife is only a *prima facie* presumption, subject to be rebutted by proof of the contrary when justice requires it. (*Harrison v. Harrison,* 20 Ala. 629; 56 Am. Dec. 227; *Harteau v. Harteau,* 14 Pick. 181; 25 Am. Dec. 372; *Colvin v. Reed,* 55 Pa. St. 379; *Harding v. Alden,* 9 Greenl. 140; 23 Am. Dec. 549; *Hunt v. Hunt,* 72 N. Y. 217, 242; 28 Am. Rep. 129; *Cheever v. Wilson,* 9 Wall. 108, 123; *Atherton v. Atherton,* 155 N. Y. 134; 63 Am. St. Rep. 650; *Robinson v. Frost,* 54 Vt. 105; 41 Am. Rep. 835; *Dutcher v. Dutcher,* 39 Wis. 659; *Smith v. Smith,* 19 Neb. 711; *Burlington v. Swanville,* 64 Me. 78; *Rundle v. Inwegan,* 9 N. Y. Civ. Pro. Rep. 330; *In re Florance,* 54 Hun, 328; *Champon v. Champon,* 40 La. Ann. 31, 32.) When the reason of the rule ceases, the rule ceases. (*Bennett v. Bennett,* Deady, 305.) The common-law rule ceases where separate rights and interests of husband and wife are recognized. (*Shute v. Sargent,* 67 N. H. 305; *Harteau v. Harteau, supra.*)

George D. Squires, and Otto Tum Suden, for Respondent.

The will must be probated in the county of the residence of the deceased person. A wife living apart from her husband cannot have a separate residence or domicile from his for testamentary purposes. (*Paulding's Will,* 1 Tuck. 47; *Hairston v. Hairston,* 27 Miss. 704; 61 Am. Dec. 530; *Harrison v. Harrison,* 20 Ala. 629; 56 Am. Dec. 227; *Dougherty v. Snyder,* 15 Serg. & R. 84; 16 Am. Dec. 520; *Harding v. Alden,* 9 Greenl. 140; 23 Am. Dec. 549; *Loker v. Gerald,* 157 Mass. 42; 34 Am. St. Rep. 252; *Hanberry v. Hanberry,* 29 Ala. 719; 5 Am. & Eng. Ency. of Law, 868, and cases cited; *Anderson v. Watt,* 138 U. S. 694.) In this state a wife can acquire a separate residence from her husband only for the purpose of suing the husband for a divorce. (Civ. Code, sec. 129.) *Expressum facit cessare tacitum.* For other purposes the residence of the husband is the residence of the wife. (*First Nat. Bank v. Bruce,* 94 Cal. 77; *Dow v. Gould etc. Co.,* 31 Cal. 630; *Luck v. Luck,* 92 Cal. 653; *Kashaw v. Kashaw,* 3 Cal. 312.) "Proceedings for the administration and distribution of the estates of deceased persons are purely

statutory, and though the superior court is a court of general jurisdiction, yet, while sitting as a court of probate, its jurisdiction is limited and special, and all acts in excess of the statutory power conferred are nugatory, and do not bind those who have invoked its authority or submitted to its decision." (*Smith v. Westerfield,* 88 Cal. 374; *Buckley v. Superior Court,* 102 Cal. 8; 41 Am. St. Rep. 135; *Neary v. Godfrey,* 102 Cal. 342; *Long v. Superior Court,* 102 Cal. 452; *Maddock v. Russell,* 109 Cal. 422.)

TEMPLE, J.—The will of Olive Jane Wickes was refused probate by the superior court of Alameda county on the ground that the testatrix, at the time of her death, did not reside in that county, and this appeal is from that order. The will was contested by the surviving husband of the testatrix on many grounds. He also contended that the testatrix, at the time of her death, resided in San Francisco. This last contention was sustained by the court.

At the trial some of the facts were agreed upon as follows: "That in October, 1894, and for many years prior thereto, Olive Jane Wickes and Alfred M. Wickes, her husband, lived and resided in the city of San Francisco, California; that about that time the husband of deceased, Olive Jane Wickes, being afflicted with an incurable disease, paralysis, bed-ridden and unable to assist himself in any manner whatever, was by the said Olive Jane Wickes and with the consent of Alfred M. Wickes removed from the then home of the parties and placed in an institution for incurables known as 'The Kings Daughters' Home for Incurables,' which is located in said city of San Francisco; that his entrance fee entitling him to remain for life was paid, and he did so remain continuously until he died on December 24th, 1898. The said Alfred M. Wickes never did reside in Alameda county. The said Olive Jane Wickes was never admitted as an inmate or otherwise of said home. That at the time said Alfred M. Wickes was placed in said home he required personal care and attention, and that by reason of ill-health Olive Jane Wickes was unable to render the same to him personally. That provision was made for him at said home for life and for his burial by the payment of a stipulated sum of money and a contract entered into accordingly. That after October, 1894, said

Alfred M. Wickes never had, or claimed to have, any place of residence, save as an inmate of said home, and that from and after October, 1894, Alfred M. Wickes and Olive Jane Wickes never lived together as husband and wife, but lived separate and apart by reason of the foregoing circumstances, but not by reason of any agreement of separation, or by reason of any decree of court. That about April, 1895, Olive Jane Wickes sold her then home in San Francisco, and moved to the city of Oakland, said Alameda county, and thereupon purchased a lot in said city, erected a house thereon, and resided therein until November, 1897, when she sold the same and thereafter lived in said city in rented houses until about July, 1898, when, after stopping in several places in said city of Oakland, she went to Fabiola Hospital in said city, where she died on November 5, 1898."

Additional testimony was given by the contestant, some of which tended to show that, at one time during her stay in Oakland, Mrs. Wickes contemplated returning to San Francisco, and even applied for admission to the same hospital in which her husband was being treated.

The court found that Mrs. Wickes was not a resident or domiciled in Alameda county at the time of her death, but that her residence and domicile was in the city and county of San Francisco. There being no controversy as to any material fact, the question is purely a matter of law.

Upon this subject we find in Dicey's work on Domicile, rule 9: "The domicile of every dependent person is the same as and changes (if at all) with the domicile of the person on whom he is, as regards his domicile, dependent." Subrule 2: "The domicile of a married woman is, during coverture, the same as, and changes with, her husband's." Under this subrule it is said: "The fact that a wife actually lives apart from her husband (*Warrender v. Warrender*, 2 Clark & F. 488), that they have separated by agreement (*Dolphin v. Robins*, 7 H. L. Cas. 390), that the husband has been guilty of misconduct, such as would furnish defense to a suit by him for restitution of conjugal rights (*Yelverton v. Yelverton*, 1 Swab. & T. 574), does not enable the wife to acquire a separate domicile." Rule 10 is: "A domicile cannot be acquired by a dependent person through his own act."

Under this rule an illustration is given of a German woman married to an Englishman, who, after living for a time with her husband in England, returns to Germany to remain for the balance of her life. She may have her home in Germany, but her domicile will remain in England, if her husband continues to reside there.

The above rules have application only to the case where husband and wife have separate actual residences. Of course, they can be rebutted only by proof that the case is within some exception to the rule. In our code it is said: "In actions of divorce the presumption of law that the domicile of the husband is the domicile of the wife does not apply." (Civ. Code, sec. 129.) Counsel say this rule is only a presumption of evidence, and since it is not included in the presumptions mentioned in section 1962 of the Code of Civil Procedure, it may be rebutted by evidence. But the law that the domicile, or, more accurately, the forum, of the wife is where the husband is domiciled, although she is actually living in a different place, is not a rule of evidence. It is a law to which there are some exceptions, and the presumption as to a particular case is that it is controlled by the general rule, unless it is shown that it is within some exception.

There are certain well-ascertained exceptions to the rule, but plainly this case is not within any of them. The common law is the rule of decision in this state, where no positive law, state or national, controls. It is certain that in England, at least prior to the present century, there was no exception whatever to the rule of law that the domicile of the husband is the legal domicile of the wife, and that she can under no circumstances, during coverture, acquire a legal domicile for herself.

The matter was elaborately considered in the house of lords in 1835, in the case of *Warrender v. Warrender, supra.* Warrender was a Scotchman, who, holding certain high offices, actually lived for a portion of the time in England. He married an English woman in England. They went to his estates in Scotland for a short time, and then returned to England, where they resided some two years when a formal separation was agreed to. They agreed to live apart from each other, and the husband in writing agreed that the wife could go and reside

wherever she pleased.   In pursuance of this she lived in France, and some fourteen years afterward the husband sued for a divorce in Scotland.   The service of process upon the wife was such as could only be made upon a person whose legal domicile was in Scotland.   Whether that was the legal domicile of Lady Warrender was the principal point involved on the appeal.   It was held that the plaintiff was still domiciled in Scotland, and that his domicile was the legal domicile of the wife.   Speaking of the fact that the wife's actual residence was in France, with the consent of her husband, the lord chancellor said: "Her actual residence—residence in point of fact—signifies nothing in the case of a married woman, and shall not, in ordinary circumstances, be set up against the presumption of law that she resides with her husband. . . . . Nay, had the parties lived in different places by mutual understanding which prevailed between them, the case would still be the same.   The law could take no notice of the fact, but must proceed upon its own conclusive presumption and hold her domicile where she ought to be, and where in all ordinary circumstances she would be—with her husband."   And again: "In other words, no fact and no contract, no matter *in pais*, and no deed executed can rebut the overruling presumption of the law that the married live together, or, which is the same thing, that they have one residence —one domicile."   These citations show both what the common law of England upon the subject was, and the nature of the presumption, if it can be so called.   The rule is absolute.

The case of *Dolphin v. Robins, supra*, is interesting from the fact that Lord Cranworth, in rendering the opinion of the court, mildly protested against the universality of the rule which denied the right of the wife to establish a domicile different from that of her husband in any case.   In that case an English woman, having been divorced, as she supposed, married a Frenchman and lived with him many years in France, where she died, having made a will, which was valid if she was then lawfully domiciled in France.   There had been a legal separation between the parties before the divorce.   The fact that the testatrix was a married woman did not affect the question, except by determining her domicile.   The court held the divorce void, and although there was also the agreement to live in sepa-

ration, that she could not acquire another domicile for testamentary purposes.

A still later case, in 1876, was decided by Sir R. J. Phillimore. (*Le Suer v. Le Suer*, L. R. 1 P. D. 139.) The action was for a divorce. The parties were married in the island of Jersey, where the husband deserted the wife, and then went to America, where he continued to reside. The wife removed to England, where she commenced the action for divorce. The judge said the husband deserted the wife, and it might well be claimed that this fact entitled her to acquire a domicile for herself, but he says: "I am not aware that any judicial decision has as yet gone to this length, but there is much to be said in favor of the proposition both on principle and analogy"; and he concludes the decision with the statement that he thinks in case of desertion the wife can acquire a domicile which would enable her to bring the action, and says: "In coming to that conclusion I am aware that I am going a step further than judicial decisions have yet gone." The court refused to take jurisdiction on other grounds, and the remarks were *obiter*, but are high authority for the proposition that the appellant has no support in the rules of the common law.

In the United States, the cases are at variance as to whether, for the purposes of maintaining an action for a divorce, a wife can acquire a domicile by her own act. In the majority of the states the rule is as declared by our own statute. But this rule only allows that she may acquire a domicile for the purposes of the divorce (Jacobs on Domicile, sec. 226), and that is really the effect of our statute. In actions for divorce, the presumption that the domicile of the husband is the domicile of the wife does not prevail. Of course, for all other purposes her forum is where her husband has his domicile. This consideration would be sufficient to dispose of this case, for, although there are other exceptions to the rule which must be recognized in our state, this case is not within any of them. It may be admitted, not only, as claimed, that a wife may have a different forum whenever it is necessary for her protection that she should have, but that she may by her own act acquire a domicile for herself whenever our statutory provisions justify a separate residence for her. I find no authority in the

decisions for this last proposition, save one from New Hampshire, to be presently noticed, but, admitting such to be the rule, this case is not within it. We must not in this connection confound the right to a separate home or actual residence with the question of domicile. At common law, the right of the wife to a separate home was often recognized and secured, but that fact did not, nor did even a judicial separation, enable her to acquire another and different legal domicile. To a large extent it is a question as to the forum in which the wife shall assert her legal rights. Counsel cites the case of *Cheever v. Wilson*, 9 Wall. 108, where Justice Swayne says in regard to the domicile acquired by a wife for the purposes of divorce: "The rule is that she may acquire a separate domicile whenever it is necessary or proper for her to do so." Supposing this rule to apply to a domicile for other purposes than divorce, this case is still not within it.

The stipulation recites that for many years prior to October, 1894, the parties had resided in San Francisco, where the husband, who is, or was, contestant here, being "afflicted with an incurable disease, paralysis, bed-ridden, and unable to assist himself in any manner whatever," was by his wife, who was apparently possessed of property, removed to a home for incurables, with his consent. "Provision was made for him at said home for life, and for his burial, by payment of a stipulated sum of money and a contract entered into accordingly." Having done this, it is contended, she was at liberty to leave him and seek another domicile for herself. I think not. It was her duty to stay with him and minister to him in his last sickness. The fact that he required nursing, and that he was placed in a hospital that he might receive proper care, did not release her from her duty to comfort him, if possible, in this trying period. Her duty as a wife was to stay with him to the last, and to give him Christian burial. She should not have contracted for his care during life for a stated sum, making it for the interest of those in charge to do as little as possible for him, and that he should die as soon as possible. She should have been at hand to furnish such relief as his miserable condition permitted, from day to day, so far as her means would justify. And it was not wifely to contract for his burial in her absence

in that mode. Never was it more imperatively her duty to make his domicile her domicile than at that time. Perhaps, because of his helplessness, she could have changed the family domicile, but she was not entitled to a separate domicile.

It does not appear that Mrs. Wickes had any necessity for a different forum or domicile. So far as it appears, she had no litigation of any kind.

The only case cited by the appellant, the language of which would seem to support his contention, is *Shute v. Sargent,* 67 N. H. 305. The decision is based upon the statutes of New Hampshire, and for that reason is not authority here, where the common law of England is made the rule of decision. But some of our statutes resemble some in New Hampshire. The court assumed that the common-law rule of domicile was founded upon the proposition that during coverture the personality of the wife is merged in that of the husband, and concludes that now, when she is in all respects before the law on an equality with her husband, and may vote, there is no good reason why she should not be able to acquire a separate domicile for any purpose. The court does not say under all circumstances. I am ready to concede that, so far as our statutes authorize the wife to live apart from her husband, the rule may be relaxed. These are exceptions to the law, but in other cases the law still prevails. The subjection of the wife to the husband was not the only reason for the rule. Parties marrying contract to live together. The husband obligates himself to furnish a proper home for his wife and to maintain her there in a degree of comfort authorized by his circumstances, and they mutually agreed to live there together. It is a matter of great public concern that this should be so. In this association there can be no majority vote, and the law leaves the ultimate decision to the husband. For the protection of the wife she is allowed a different forum, when necessary in legal proceedings against her husband. In reality, this is not giving her a new domicile, but she is allowed to bring these suits where she actually resides, though that be not her legal domicile. I think the case is not very well reasoned.

The general question in England and in this country has importance in regard to the settlement of paupers, and also as to

the residence of voters, and for testamentary and other purposes. There are dependent persons other than married women who may not select their own domicile—minors, for instance, and all under guardianship. The rule has practical bearings on many things, and should not be lightly changed, and there is no sort of temptation to disregard the law here.

The order is affirmed.

McFarland, J., and Henshaw, J., concurred.