[L. A. No. 22864.   In Bank.   Oct. 28, 1955.]

DOROTHEA COLE et al., Appellants, v. PAUL RUSH et al., Defendants; FRANK VAN STONE, Respondent.

346

John C. Stevenson and Lionel Richman for Appellants.

Parker, Stanbury, Reese & McGee, J. H. Peckham and C. G. W. McGee for Respondent.

MacFarlane, Schaefer & Haun, E. J. Caldecott, Trippet, Newcomer, Yoakum & Thomas and Lyle C. Newcomer as Amici Curiae on behalf of Respondent.

SCHAUER, J.—In this wrongful death action plaintiffs, who are the surviving widow and minor children of James Bernard Cole, deceased, seek to recover damages for the allegedly negligent furnishing of intoxicating liquor to the deceased, which plaintiffs claim proximately caused his death. They appeal from an adverse judgment entered upon the sustaining of a demurrer to their amended complaint, without leave to amend. We have concluded that the trial court correctly held that the complaint does not state facts sufficient to constitute a cause of action, and that the judgment should be affirmed.

The material allegations of the amended complaint are that defendants own and operate an establishment known as the Tropic Isle in which "intoxicating liquors are sold and furnished to the public for consumption on the premises"; on October 13, 1950, James Bernard Cole was a patron of the Tropic Isle and defendants "did sell, furnish, give, and cause to be sold, furnished and given" to him alcoholic beverages which he drank; immediately before he came "to the premises of the defendants . . . Cole was not intoxicated by reason of the use of alcoholic beverages," but he "did drink said alcoholic beverages so sold, furnished and given until and after . . . [he] became intoxicated." Cole had patronized the Tropic Isle on numerous occasions and was well known to defendants, who also knew that he was "normally of quiet demeanor but that when . . intoxicated he became belligerent, pugnacious and quarrelsome"; on numerous prior occasions plaintiff widow had requested defendants "not to sell or furnish intoxicating beverages to said James Bernard Cole *sufficient*[1] *to allow him to become intoxicated thereon*" (italics added), but defendants refused

---

[1]By what standards or tests the defendants on any occasion might determine the amount which properly could be furnished is not disclosed.

to comply with such requests; ''by reason of said intoxication, and by reason of said alcoholic beverages so unlawfully sold, furnished or given . . . and as a proximate result thereof, . . . Cole became belligerent, pugnacious and quarrelsome; . . . Cole did thereafter on said date quarrel with one Franklin Leonard; . . . Cole and . . . Leonard did engage in fisticuffs; . . . Cole was struck by    . Leonard and did fall to the pavement, striking his head against the concrete, by reason of which . . . Cole suffered a subarachnoid hemorrhage, traumatic, and died immediately from the effects of said blow''; at the time of his death Cole ''was an able-bodied man of the age of 39 years,'' earning approximately $4,000 a year.

Defendant Frank Van Stone, alleged to be one of the owners of the Tropic Isle, demurred to the amended complaint on the ground that it fails to state facts sufficient to constitute a cause of action. By way of particularizing its insufficiency he specifies, among other things, that the complaint shows on its face that decedent's injuries were caused or contributed to by fault and negligence on decedent's part and that it cannot be determined in what manner any acts of the defendant were the proximate cause of the alleged injuries. Following the hearing upon the demurrer and the statement of counsel for plaintiffs that ''he cannot further amend,'' the court sustained the demurrer without leave to amend, and judgment was entered accordingly.

The general rule of the common law as to tort liability arising out of the sale of intoxicating beverages is stated in 30 American Jurisprudence 573, section 607: ''The common law gives no remedy for injury or death following the mere sale of liquor to the ordinary man, either on the theory that it is a direct wrong or on the ground that it is negligence, which imposes a legal liability on the seller for damages resulting from the intoxication.'' (For examples of cases following the rule see: *Hitson* v. *Dwyer* (1943), 61 Cal.App.2d 803, 808 [143 P.2d 952]; *Fleckner* v. *Dionne* (1949), 94 Cal.App.2d 246 [210 P.2d 530]; *Lammers* v. *Pacific Elec. Ry. Co.* (1921), 186 Cal. 379, 384 [199 P. 523]; *Howlett* v. *Doglio* (1949), 402 Ill. 311 [83 N.E.2d 708, 712]; *Tarwater* v. *Atlanta Co., Inc.* (1940), 176 Tenn. 510 [144 S.W.2d 746]; 48 C.J.S. 716-718; see also anno. 44 L.R.A.N.S. 299; 130 A.L.R. 357-369.) A number of jurisdictions have adopted statutes creating a right of action, under specified conditions,

against persons furnishing intoxicants.[2] California, however, has enacted no such statute notwithstanding the fact that, as hereinafter shown, its Legislature has repeatedly dealt with problems concerning alcoholic beverages and concerning tort liability.

Plaintiffs with commendable frankness state in their opening brief (p. 3) that they "recognize that it is the general rule of law that it is the consumption of the intoxicating liquor which is the proximate cause of any subsequent injury by reason of such intoxication rather than the sale of intoxicating liquor" (citing *Hitson* v. *Dwyer* (1943), *supra*, and *Fleckner* v. *Dionne* (1949), *supra*; see also *Collier* v. *Stamatis* (1945), 63 Ariz. 285 [162 P.2d 125, 127]: "The principle is epitomized in the truism that there may be sales without intoxication, but no intoxication without drinking"), but urge that "knowledge on the part of the defendants of the propensities of Cole to seek a quarrel when intoxicated, and . . . their wilful refusal to heed the pleas of the wife, and their wilful insistence in selling intoxicating liquor to Cole and allowing him to be intoxicated" are distinguishing factors which support the charge of negligence here and establish the sale of the liquor as the proximate cause of the injury. Such a view, we conclude in the light of the common law, cannot be sustained in this state in the absence of legislative action.

In the first place, it appears that in *Lammers* v. *Pacific Elec. Ry. Co.* (1921), *supra,* 186 Cal. 379, 384, this court stated and relied on the general rule that "the sale of intoxicating liquor is not the proximate cause of injuries subsequently received by the purchaser because of his intoxication." In that case the plaintiff, while intoxicated, was ejected from defendant's passenger train; he left the place of immediate peril where he was ejected but later returned to the tracks at a point about three-quarters of a mile away and was seriously injured. The court said: "The only connection between the ejection and the injury would be the fact that if there had been no ejection there would have

[2]It appears that such a statute has been adopted in Arkansas, Colorado, Connecticut, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Massachusetts, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, South Dakota, Utah, Vermont, Washington, West Virginia, Wisconsin. (See 48 C.J.S. 717-718, § 431; 30 Am. Jur. 576, § 612; Ann.Cas. 1917B, p. 534; Black on Intoxicating Liquors, § 277, pp. 326-331; see also 6 A.L.R.2d 798-807.)

been no injury. The sale of the whiskey to the plaintiff would come nearer being a proximate cause of the injury than the ejection from the railway train. The peril arising from the ejection ceased the moment the passenger left the position where he could be struck by defendant's trains, while the peril arising from the use of the intoxicating liquor continued in operation up to the time of the injury and contributed thereto, and yet it has been uniformly held in the absence of statute to the contrary that the sale of intoxicating liquor is not the proximate cause of injuries subsequently received by the purchaser because of his intoxication (Joyce on Intoxicating Liquors, § 421; *Cruse* v. *Aden*, 127 Ill. 231, 234 [20 N.E. 73, 3 L.R.A. 327].) . . . That the injury was not the proximate result of the ejection is demonstrated by the fact that the plaintiff was able to, and did in fact, leave the place of danger and subsequently of his own volition returned to a position of danger on defendant's tracks, and that but for plaintiff's action in so returning to a position of danger the accident would not have occurred.''

In the second place, it is to be observed that in *Fleckner* v. *Dionne* (1949), *supra*, 94 Cal.App.2d 246, knowledge on the part of the tavernkeeper was, as here, expressly averred. The allegations of the complaint there were that on the evening in question defendant Dionne, a minor, was a patron of the tavern and was sold and given intoxicating liquors and allowed to consume them in the tavern; that the defendant tavernkeeper *knew* that Dionne was a minor and sold the liquors to him while he was already under the ''severe influence of intoxicating liquors''; that he knew also that Dionne had upon or near the premises an automobile and would thereafter drive it; that defendant *knew* and should have known and foreseen that the driving of the automobile by him in his then intoxicated condition could and would result in harm and damage to others upon the highway; that Dionne while so intoxicated negligently drove his automobile into an automobile in which plaintiffs were riding and injured them; that the sale and serving of the liquor to Dionne by defendant constituted a ''negligent disregard of the rights of plaintiffs'' which joined with Dionne's negligence in proximately injuring plaintiffs. Defendant's general demurrer was sustained with leave to amend and on plaintiffs' failure to amend judgment was entered in defendant's favor. The District Court of Appeal affirmed the judgment, relying upon the Hitson and Lammers cases, *supra*,

as well as upon various out-of-state decisions, and this court denied a hearing.[3] Its judgment stands, therefore, as a decision of a court of last resort in this state, until and unless disapproved by this court or until change of the law by legislative action. It is to be noted that the knowledge alleged in the Fleckner case was more specific and extensive than that in the instant case. Here it is only alleged that defendant knew of the belligerent disposition of the deceased when he was intoxicated.

In the next place, it is to be observed that in *Hitson* v. *Dwyer* (1943), *supra*, 61 Cal.App.2d 803, it was held that one who suffers injuries by reason of his own intoxication may not recover from the tavernkeeper by reason of the sale of the liquor to the plaintiff. In that case plaintiff alleged that while obviously intoxicated and sitting on a movable stool at defendants' bar he wrongfully was served intoxicating liquor, and as a result he fell from the stool to the floor, and was thereafter dragged by defendants from his position on the floor; that as a result of the fall or the dragging or both, plaintiff was injured. It was held that so far as concerned the fall and any injuries suffered therefrom, the proximate cause was the drinking of the liquor rather than the wrongful (i.e., in violation of the alcoholic beverage control act) sale thereof to an obviously intoxicated person, and any wrong in the sale was nonactionable. This court denied a hearing. ■ If the man who is injured by reason of his intoxicated state may not himself recover from the one who provided the liquor, then it follows that under the established law governing wrongful death actions, his survivors may not recover in this, which is such an action. (*Buckley* v. *Chadwick* (1955), *ante*, pp. 183, 201 [288 P.2d 12, 289 P.2d 242]; see also *Demge* v. *Feierstein* (1936), 222 Wis. 199 [268 N.W. 210, 212] [liquor sale]; *Scott* v. *Green-*

---

[3]Denial of a hearing is not the equivalent of express approval by this court but it has been said that "The order of this court denying a petition for a transfer . . . after . . . decision of the district court of appeal may be taken as an approval of the conclusion there reached, but not necessarily of all of the reasoning contained in that opinion." *Eisenberg* v. *Superior Court* (1924), 193 Cal 575, 578 [226 P. 617]; see also *People* v. *Rowland* (1937), 19 Cal.App.2d 540, 542 [55 P.2d 1333].) The significance of a denial in any particular case is also to be understood as further qualified by the fact that under the Rules on Appeal a denial may mean no more than that a ground which we deem adequate or impellent for ordering a hearing has not been brought to our attention. (See rule 29, Rules on Appeal.)

*ville Pharmacy* (1948), 212 S.C. 485 [48 S.E.2d 324, 326]
[barbiturate sale]; 30 Am.Jur. 575, § 610.)

Other cases, from other jurisdictions, relied upon by plaintiffs are clearly distinguishable on their facts, even if it be assumed that upon similar facts action would lie in California. For example, *Cherbonnier* v. *Rafalovich* (1950), 88 F.Supp. 900, was an action against saloonkeepers by one of their patrons who, while he was eating in the saloon and cafe, was attacked by another patron, one Hobson, who was drunk. Although dismissing the complaint for failure to state a cause of action in that it was not alleged that defendants knew Hobson was of a violent disposition or had threatened harm to plaintiff before he was served the last of the intoxicating drinks, the court did observe (p. 903) that ''The present trend is apparently toward holding the defendant saloonkeeper liable for lawless acts occurring in the saloon,'' and quoted from 30 American Jurisprudence 574, section 609, the statement that ''The better reason appears to favor placing on the proprietor the duty of seeing to it that the patron is not injured either by those in his employ or by drunken or vicious men whom he may choose to harbor Further, a guest or patron of such a place has a right to rely on the belief that he is in an orderly house and that its operator . . . is exercising reasonable care to the end that the doings in the house shall be orderly.'' Here, if Leonard had been injured by Cole (who was the attacker) and if the former or his next of kin were the plaintiffs, and if it were further alleged that Leonard had been within the defendants' premises and was there attacked by Cole, we would then have a case to which the Cherbonnier decision might be pertinent. Obviously it is not in point on the facts which are alleged.

*Rommel* v. *Schambacher* (1887), 120 Pa. 579 [11 A. 779, 6 Am.St.Rep. 732]; *Curran* v. *Olson* (1903), 88 Minn. 307 [92 N.W. 1124, 97 Am.St.Rep. 517, 60 L.R.A. 733]; and *Peck* v. *Gerber* (1936), 154 Ore. 126 [59 P.2d 675, 106 A.L.R. 996], additionally relied upon by plaintiffs, also involve the liability of the saloonkeeper as a proprietor for not using reasonable care in maintaining order for the safety of his guests. However, as is indicated in the opinions in the cited cases as well as in the annotation in 106 American Law Reports 1003, following the report of *Peck* v. *Gerber* (1936), *supra*, and as recognized by the court in the Cherbonnier case, the liability of a saloonkeeper in this line of cases appears to be related to that of innkeepers and restaurateurs for

injuries to guests or patrons by other guests or persons not connected with the management, and is an exception to the general common law rule of nonliability of the vendor of intoxicating liquor, and furnishes no precedent for imposing liability on the saloonkeeper under the circumstances alleged in the complaint in this case.

In *Pratt* v. *Daly* (1940), 55 Ariz. 535 [104 P.2d 147, 130 A.L.R. 341], plaintiff wife was permitted to recover damages resulting from defendants' sale of intoxicating liquor to her husband with knowledge of the fact that the husband was an *habitual drunkard*. Arizona had no civil damage statute. The court there, after discussing the rule as stated in Restatement of the Law of Torts, volume 3, section 696, that "One who, without a physician's direction, sells. or otherwise supplies to a married woman a habit-forming drug with knowledge that it will be used in a way which will cause harm to any of the legally protected marital interests of the husband is liable for harm caused by such drug to those interests unless the husband consents to the wife's acquisition or use of the drug" and that the same rule applies to ·a sale to the husband in an action by the wife under similar circumstances (see also 130 A.L.R. 352-365), then goes on to observe (p. 347 of 130 A.L.R.) : "Of course, since there is not the same presumption that the use of liquor will eventually cause the loss of volition that there is with a habit-forming drug, it is incumbent upon plaintiff to prove that to the knowledge of defendant such a stage has been reached by the consumer, but if this fact is once established, in all reason and logic the right of action should be the same in one case as in the other . . . [P. 348.] The allegation of the complaint is that the husband of plaintiff was an 'habitual drunkard,' and that the fact was well known to defendants. The term 'habitual drunkard' has been defined repeatedly, and in almost all of the definitions the principal element emphasized is that such a person has lost the will power to resist the temptation when the liquor is offered him." In *Collier* v. *Stamatis* (1945), *supra*, 162 P.2d 125, 126-127, the Arizona court held that no cause of action for loss of services lies against a tavernkeeper who unlawfully sold intoxicating liquor to a child of the age of 15, upon which she became intoxicated, because "It cannot be said as a matter of law that a child of fifteen has neither will nor choice nor discretion whatever"; the court further confirmed that its opinion in the

*Pratt* v. *Daly* case rested upon the showing by plaintiff wife that her husband was "incapable of voluntary action." (See also *Cavin* v. *Smith* (1949), 228 Minn. 322 [37 N.W.2d 368, 369].) By contrast, the plaintiffs in the case now before us allege no such lack of volition on the part of the decedent, but, rather, that he was an "able-bodied man" who was not intoxicated immediately before he entered defendant's establishment on the day in question. Other cases indicating the court's awareness of the materiality of the element of volition or of competency, and, hence, of at least contributing responsibility of the voluntary drinker or user, are *Seibel* v *Leach* (1939), 233 Wis. 66 [288 N.W. 774], in which the court remarked that "Under the common law it is not an actionable wrong to sell or to give intoxicating liquors to an able-bodied man," and affirmed a judgment dismissing the complaint; and *Scott* v. *Greenville Pharmacy* (1948, S.C.), *supra*, 48 S.E.2d 324, 327, in which it was pointed out that the complaint failed to describe plaintiff's deceased husband "as being without mind or lacking in volition," in buying and consuming barbiturate capsules during a period of about a year, at the end of which time he committed suicide by hanging himself, and judgment for defendant, who sold the barbiturates, following the sustaining of his demurrer was affirmed. (See also 30 Am.Jur. 575-576, § 611.)

■■ For this court to hold that plaintiffs have here stated a cause of action by averring facts which establish that no cause of action arose either by statute or by common law as the same existed at the time of the events relied upon would at the least constitute a departure from its constitutional function and an encroachment upon that of the Legislature. As declared by the court in *State* v. *Hatfield* (1951), 197 Md. 249 [78 A.2d 754, 757], in affirming the judgment on demurrer in defendants' favor in a wrongful death action in which plaintiff widow whose husband was killed by an intoxicated driver sought damages from tavern owners who had sold the liquor, "It would be worse than futile for us to attempt to convince plaintiff by reason, where all other courts have failed and the accumulated mass of authority carries no weight at all. In the circumstances of this case . . . we should virtually usurp legislative power if we should declare plaintiff's contentions to be the law of Maryland. In the course of the last hundred years there probably has seldom, if ever (except during prohibition), been a regular session of the General Assembly at which no liquor laws were passed.

On few subjects are legislators kept better informed of legislation in other states. In the face of the flood of civil damage laws enacted, amended and repealed in other states and the Volstead Act—and of the total absence of authority for such liability, apart from statute—the fact that there is now no such law in Maryland expresses the legislative intent as clearly and compellingly as affirmative legislation would.'' (See also *Henry Grady Hotel Co.* v. *Sturgis* (1943), 70 Ga. App. 379 [28 S.E.2d 329, 333].)

The significance of legislative action in the light of established law and of pertinent judicial decisions has been repeatedly recognized in this state. ■ As we have so recently said in *Buckley* v. *Chadwick* (1955), *supra, ante,* pp. 183, 200 [288 P.2d 12, 289 P.2d 242], ''It is a generally accepted principle that in adopting legislation the Legislature is presumed to have had knowledge of existing domestic judicial decisions and to have enacted and amended statutes in the light of such decisions as have a direct bearing upon them.''

■ The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended. In this connection it should be noted that section 22.2 of the Civil Code of this state specifically declares that ''The common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this State, is the rule of decision in all the courts of this State.'' (See also *Philpott* v. *Superior Court* (1934), 1 Cal.2d 512, 515 [36 P.2d 635, 95 A.L.R. 990]; *Gin S. Chow* v. *City of Santa Barbara* (1933), 217 Cal. 673, 695 [22 P.2d 5]; *Munchiando* v. *Bach* (1928), 203 Cal. 457 [264 P. 762]; *Peters* v. *Peters* (1909), 156 Cal. 32, 34 [103 P. 219, 23 L.R.A.N.S. 699]; 10 Cal.Jur.2d 651-652, § 2, and cases there cited; 23 Cal.Jur. 603.)

■ Accordingly, it is to be noted that notwithstanding the holding of this court in *Lammers* v. *Pacific Elec. Ry. Co.* (1921), *supra,* 186 Cal. 379, 384; and of the District Court of Appeal in *Hitson* v. *Dwyer* (1943), *supra,* 61 Cal.App. 2d 803, 808, and in *Fleckner* v. *Dionne* (1949), *supra,* 94 Cal.App.2d 246, the Legislature of California has at no time seen fit to adopt a statute inconsistent with the common law so far as concerns a remedy for injury or death following the furnishing of liquor to the ordinary man. Demonstrating awareness by the Legislature of problems relating to the fur-

nishing and consumption of intoxicating liquors, and a similar awareness in respect to problems of tort liability, it is pointed out (without attempting to go back as far as the Lammers case, in 1921) that in the 10 years immediately following the decision in the Hitson case (1943) the Legislature made numerous changes in statutes governing the sale, use, and furnishing of intoxicating liquors (see e.g., Stats. 1945, pp. 1023, 2295, 2615; Stats. 1947, pp. 2003, 2051, 2490, 2791, 2936, 3019, 3025; Stats. 1949, pp. 492, 1546, 1582, 1884, 2060, 2349, 2735; Stats. 1951, pp. 1897, 2814, 3051; Stats. 1953, pp. 646, 918, 954, 1949, 2084, 3345) and also in statutes having to do with various aspects of tort liability (see e.g., Civ. Code, §§ 43, 43.5(a), 45a, 46, 47, 48, 48a, 48.5, 171(c), 956, 1714.5, 1714.6, 3341, 3342; Code Civ. Proc., § 377), but there was no adoption of a statute imposing liability in such a case as is now before us. Under such circumstances not only does the legislative intent appear to be to maintain, rather than to depart from, the pertinent common law, but in the further light of the express enactment (Civ. Code, § 22.2) that ''The common law . . . so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this State, is the rule of decision in all courts of this State,'' it becomes manifest that the common law is the controlling law in this case. (*Estate of Apple* (1885), 66 Cal. 432, 434 [6 P. 7] [''where the code is silent, the common law governs''] ; *Estate of Wickes* (1900), 128 Cal. 270, 274 [60 P. 867, 49 L.R.A. 138] [''The common law is the rule of decision in this state, where no positive law, state or national, controls''] ; *Peters* v. *Peters* (1909), *supra*, 156 Cal. 32, 34 [''The common law of England is declared to be the rule of decision in all courts of this state, so far as it is not repugnant to or inconsistent with our constitution and statutes''] ; see also *Gray* v. *Sutherland* (1954), 124 Cal.App.2d 280, 290 [268 P.2d 754] ; 10 Cal.Jur.2d 652, § 2.)

Since it is established both by the common law and by the decisional law in this state (1) that as to a competent person it is the voluntary consumption, not the sale or gift, of intoxicating liquor which is the proximate cause of injury from its use; (2) that the competent person voluntarily consuming intoxicating liquor contributes directly to any injury caused thereby; and (3) that contributory negligence of the decedent bars recovery by his heirs or next of kin in a wrongful death action, the judgment must be, and it is, affirmed.

Gibson, C. J., Edmonds, J., and Traynor, J., concurred.

SPENCE, J.—I concur.

Further consideration of this case upon rehearing convinces me that the governing law, as heretofore enunciated by the courts of this state as well as by the courts of practically all other jurisdictions, precludes plaintiff's recovery. I am further in agreement with the view expressed in the main opinion that the established rules should be followed until such time as these rules may be changed by legislative action. I therefore conclude that the trial court properly sustained the demurrer, and that the judgment should be affirmed.


CARTER, J.—I dissent.

I do not agree with the statement of the majority opinion that the common law so clearly forbids recovery in a case such as the one under consideration, or that under the circumstances here presented the consumption of the liquor, rather than its sale, should be considered the proximate cause of the death. For the reasons stated by me in my dissenting opinion in the case of *Buckley* v. *Chadwick, ante,* p. 183 [288 P.2d 12, 289 P.2d 242], I also disagree with the holding that any contributory negligence on the part of a decedent is, or should be, a bar to recovery by his heirs or next of kin. It further appears to me that the holding that plaintiffs' decedent was a "competent" person because of plaintiffs' use of the phrase "able bodied" in describing him is outside any of the issues here presented. Plaintiffs alleged that defendants knew of the decedent's propensities when intoxicated—that he was dangerous to himself and to others—and that they, with such full knowledge, sold alcoholic beverages to him.

Under the holding of the majority here, a tavern owner may escape liability for the death or serious injury of innocent third persons by an intoxicated patron when he has furnished intoxicating liquor to such patron after warning by both relatives and police that such person should not be furnished any intoxicating liquor whatsoever because of his vicious propensities when intoxicated. I cannot subscribe to such a holding.

It is true that California has no civil damage, or Dramshop Act. (*Fleckner* v. *Dionne,* 94 Cal.App.2d 246, 249 [210 P.2d 530].) The question is, therefore, whether, at common law, the surviving spouse and children of a decedent had a cause of action against one who, with notice, sold intoxicating beverages to a patron, and whether the selling, or the drinking,

of the liquor was the proximate cause of the subsequent injuries.

I am of the opinion that the California cases dealing with this problem are distinguishable from the case at bar.

In the case of *Hitson* v. *Dwyer*, 61 Cal.App.2d 803 [143 P.2d 952], plaintiff alleged that while a patron of the bar, and in an obviously intoxicated condition, he was served intoxicating liquor as a result of which he fell from the movable stool on which he was sitting; that he was dragged from his position on the floor by the defendants, and as a result of which, he suffered a fracture and other injuries of the shoulder and body. He contended that the defendants, knowing his condition, negligently failed to take precautions to protect him. Plaintiff relied in part upon the Alcoholic Beverage Act (Deering's Gen. Laws, 1937, Act 3796, § 62, Stats. 1935, p. 1123) which makes it a misdemeanor to sell alcoholic beverages to an "obviously intoxicated person." The court held that it could not be said that the purpose of the act was to protect an obviously intoxicated person, as the act itself declared (§ 1) that the purpose was to promote " . in the highest degree the economic, social and moral well-being and the safety of the State and of all its people." It was also held that "The principle that a violation of a statute or ordinance is negligence *per se,* is subject to the limitation that the act or omission must proximately cause or contribute to the injury. (*Burtt* v. *Bank of California National Association,* 211 Cal. 548 [296 P. 68] ; *Lawrence* v. *Southern Pac. Co.,* 189 Cal. 434 [208 P. 966].) Unless the alleged violation of the Beverage Act by defendants constituted the proximate cause of plaintiff's injuries such violation is wholly immaterial to a disposition of this appeal." The court continued to state the "general rule" as follows: "Rather we find the general rule to be as stated in the case of *Hyba* v. *C. A. Horneman, Inc.,* 302 Ill.App. 143 [23 N.E.2d 564] : 'The common law gave no remedy for the sale of liquor either on the theory that it was a direct wrong or on the ground that it was negligence, which would impose a legal liability on the seller for damages resulting from intoxication,' " and that the rule found support in the case of *Lammers* v. *Pacific Elec. Ry. Co.,* 186 Cal. 379 [199 P. 523], wherein the court held that the sale of intoxicating liquor is not the proximate cause of injuries subsequently received by the purchaser because of his intoxication. "Therefore, in the absence of a showing to the contrary, the proximate cause

is not the wrongful sale of the liquor but the drinking of the liquor so purchased.''

The case of *Fleckner* v. *Dionne,* 94 Cal.App.2d 246 [210 P.2d 530], was an action brought, in part, against the owners of a tavern. It was alleged that these defendants had sold intoxicating liquors to one Dionne, a minor, knowing that he was already intoxicated and knowing that he would drive his car in an intoxicated condition which could, and would, result in harm to others using the highway; that Dionne, in an intoxicated condition, did drive his car so negligently and recklessly that he caused it to collide with the car in which plaintiffs were riding to their injury and damage; that all of said injury and damage was the direct and proxi- mate result of the ''unlawfulness, negligence, recklessness of the defendants'' in selling the intoxicating liquor to the obviously intoxicated minor, Dionne.

The court cited both the Lammers and Hitson cases and held that in both of them the language *in re* proximate cause was not necessary to the decision since in the Lammers case the statement ''it has been uniformly held *in the absence of statute to the contrary* that the sale of intoxicating liquor is not the proximate cause of injuries subsequently received by the purchaser because of his intoxication'' was qualified by the words ''in the absence of statute to the contrary'' and in the Hitson case the actionable wrong was the dragging of plaintiff across the floor. (Emphasis added.)

The court cited *Seibel* v. *Leach,* 233 Wis. 66 [288 N.W. 774] where the action was for property damage and personal injuries brought by a third person against the defendant tavern owner for selling intoxicants to one Leach who drove his car in such a manner as to cause plaintiff's injuries and damage. In the Wisconsin case, the court relied upon *Demge* v. *Feierstein,* 222 Wis. 199 [268 N.W 210] which was an action brought by a widow whose husband had been sold intoxicants by tavern owners after she had given them notice not to let her husband have any more liquor After leaving the tavern, her husband lost control of his car and was fatally injured. The court there held that there was no cause of action at common law against a vendor of liquor in favor of those injured by the intoxication of the vendee (Black, Law of Intoxicating Liquors, ch. 13, § 281; *Buntin* v. *Hutton,* 206 Ill.App. 194; *Healey* v. *Cady,* 104 Vt. 463 [161 A. 151]; *Coy* v. *Cutting,* 138 Kan. 109 [23 P.2d 458]; *State* v. *Johnson,* 23 S.D. 293 [121 N.W. 785, 22 L.R.A.N.S. 1007]; *Kraus*

v. *Schroeder,* 105 Neb. 809 [182 N.W. 364, 365]). The California court concluded that in the absence of civil damage legislation in this state, and with such views as have been expressed by our courts on the subject (Lammers and Hitson cases) coinciding with the holdings in other jurisdictions where the questions have been passed upon, "we are satisfied that the sustaining of the demurrer of respondent Pangracs was correct."

Mr. Justice Dooling dissented. He admitted frankly that cases from some other jurisdictions were to the effect that in the absence of statute no remedy existed against the dispenser of liquor for injuries resulting to third persons from the acts of intoxicated persons. "However, considered as questions of the law of negligence and proximate cause, I cannot bow to the reasoning of those decisions when carried to the full extreme of holding that under no circumstances can one who dispenses liquor to another knowing that he is becoming intoxicated be liable to a third person later injured by the intoxicated person's conduct; and I can see no reason for perpetuating in the law of this state the error of the courts of other jurisdictions

"Negligence is measured by what a person of ordinary prudence would or would not do under the same or similar circumstances and *it is thoroughly settled that negligence may be the proximate cause of an injury to another even though the act of a third person intervenes, if a person of ordinary prudence could reasonably anticipate the probability of the third person's intervening conduct. (McEvoy* v. *American Pool Corp.,* 32 Cal.2d 295, 299 et seq. [195 P.2d 783]; *Mosley* v. *Arden Farms Co.,* 26 Cal.2d 213, 218 et seq. [157 P.2d 372, 158 A.L.R. 872]; *Katz* v. *Helbing,* 215 Cal. 449 [10 P.2d 1001].)" (Emphasis added.)

Both the Fleckner and Hitson cases alleged no more than negligence in serving liquors; in the present case, plaintiff wife alleges that "on occasions too numerous to name [she] requested defendants and each of them not to give, sell or furnish intoxicating beverages to James Bernard Cole sufficient to allow him to become intoxicated" but that defendants refused to desist from selling Cole intoxicating beverages; and that defendants had *specific knowledge* that when Cole became intoxicated he was invariably belligerent and quarrelsome. In the Hitson case, the plaintiff was suing for his own injuries received while *he* was intoxicated; in the Fleckner case, a third person was suing for injuries received by reason

of the driving of an automobile by an intoxicated person. In neither case were the surviving spouse and dependent children suing for loss of consortium and support; and in neither case did the defendant tavern owner have prior specific notice and knowledge of the effect of liquor on the patron to whom the intoxicants were sold.

In Woollen and Thornton "Law of Intoxicating Liquors" (vol. II, § 1029, p. 1837) it is said: "The right of persons injuriously affected by the sale of intoxicating liquors to recover damages *is not entirely restricted to the right given them by statute*. In several jurisdictions it has been held that when, by the continued sale of intoxicating liquors, a person has been unable to perform the duties owing by him to another, under the common law, the seller was liable in damages to persons to whom the duty was owing for any loss that he thereby sustained (*Holleman* v *Harward*. 119 N.C. 150 [25 S.E. 972, 56 Am.St.Rep. 672, 34 L.R.A. 803]: "It is lawful to sell laudanum as a medicine. It is also lawful to sell spirituous liquors as a beverage upon the dealers complying with the license laws, except in the cases prohibited by statute. Certainly no fair inference can be drawn from this that damages may not be recovered from one who knowingly and willfully sells or gives laudanum or intoxicating liquors to a wife, in such quantities as to be attended by such consequences to the wife as are set out in the complaint in this action ") However, *it may be stated as a general rule, that unless the rights of persons having peculiar interests in the buyers of intoxicating liquors such as a wife in her husband, or parent in the child. are invaded by the sales of intoxicating liquors and the seller of such liquors has notice of the injurious effects of the liquors so sold upon the buyer* (*Holleman* v. *Harward, supra*; *Hoard* v. *Peck*, 56 Barb. (N.Y.) 201 [opium]. *Struble* v. *Nodwift*, 11 Ind. 64), the right to recover damages for injuries resulting from the sales of intoxicating liquors is purely statutory, and the action is governed entirely by the provisions of the statute." (Emphasis added.)

In *Peck* v *Gerber* (1936), 154 Ore. 126 [59 P.2d 675, 106 A.L.R. 996], in which it appears that the plaintiff was assaulted in the saloon by another customer. the latter being a regular customer who was *known* to the saloonkeeper to be a trouble-maker. the court held the saloonkeeper liable, because he was negligent. and expressed the view that he did not use the care required of the ordinarily prudent man

in maintaining order for the safety of his guests. The court stated that the standard of care does not vary, but that the ordinarily prudent man exercises care commensurate with the dangers to be avoided and the likelihood of danger to others. There is, apparently, no statute in Oregon on which recovery could have been predicated. Other cases in which the saloon-keeper was held liable under somewhat similar circumstances are *Mastad* v. *Swedish Brethren*, 83 Minn. 40 [85 N.W. 913, 85 Am.St.Rep. 446, 53 L.R.A. 803] and *Molloy* v. *Coletti*, 114 Misc. 177 [186 N.Y.S. 730]. In *Curran* v *Olson*, 88 Minn. 307 [92 N.W. 1124, 97 Am.St.Rep. 517, 60 L.R.A. 733], where the factual situation was different, the court said: " . . the bartender knew, or might have known by the exercise of the slightest care, what the alcohol was to be used for, and could have prevented the injury to the plaintiff."

In *Cherbonnier* v. *Rafalovich* (Alaska), 88 F.Supp. 900, the court granted leave to plaintiff to plead over to allege, if he could, that the saloonkeeper had knowledge of the patron's violent disposition while under the influence of intoxicating beverages Here, the court pointed out (p. 903) that: "The present trend is apparently toward holding the defendant saloonkeeper liable for lawless acts occurring in the saloon. It is said in 30 Am.Jur. 574 that: 'The better reason appears to favor placing on the proprietor the duty of seeing to it that the patron is not injured either by those in the employ or by drunken or vicious men whom he may choose to harbor. Further, a guest or patron of such a place has a right to rely on the belief that he is in an orderly house and that the operator, personally or by his delegated representative, is exercising reasonable care to the end that the doings of the house shall be orderly.' "

It would seem from the foregoing that the rule of the com-mon law with respect to intoxicating beverages is not quite so clearly defined in favor of nonliability as would appear from statements found in other cases, and textbooks, as well as in the majority opinion.

Plaintiffs next contend that the rule of the common law with respect to habit forming drugs should be controlling here. At common law, it was held that a wife could bring an action against one who sold habit forming drugs to a husband with knowledge that the drug was intended to satisfy a craving induced by habitual use (*Hoard* v. *Peck*, 56 Barb. (N.Y.) 202; *Holleman* v. *Harward*, 119 N.C. 150 [25 S.E. 972, 56 Am.St.Rep. 672, 34 L.R.A. 803]; *Flander-*

*meyer* v. *Cooper*, 85 Ohio St. 327 [98 N.E. 102, Ann.Cas. 1913A 983, 40 L.R.A.N.S. 360] [morphine] ; *Moberg* v. *Scott*, 38 S.D. 422 [161 N.W. 998, L.R.A. 1917D 732] [opium] ; *Tidd* v. *Skinner*, 225 N.Y. 422 [122 N.E. 447, 3 A.L.R. 1145] [morphine] )

In *Pratt* v. *Daly*, 55 Ariz. 535 [104 P.2d 147, 130 A.L.R. 341] (in Arizona there is no civil damage act) it was held that defendant vendor of intoxicating liquors was liable to the plaintiff wife after selling such liquors over her protest and with knowledge that the plaintiff's husband was an habitual drunkard and had reached such a state that his power to drink or not as he chose had been destroyed. The court concluded that the defendants had breached a duty owing to the plaintiff for which the plaintiff should be compensated in damages.

A note in Southern California Law Review (14:91) points out that at common law, a vendor was liable to one spouse for a sale to the other spouse, or to a parent for a sale to a minor child of habit-forming drugs to the extent of the damages suffered by the loss of consortium or the services of the victim of the drugs, if the vendor knew or had reason to know that the drugs were to be used for a purpose harmful to the purchaser. The doctrine stems from the husband's common law cause of action against one who injures the husband's wife and thereby causes the husband expense and loss of consortium (21 A.L.R. 1517) and from the wife's similar cause of action (5 A.L.R. 1049; 59 A.L.R. 680) recognized subsequent to her right to sue in her own name as created by the various Married Women's Acts (see Cal Code Civ. Proc., § 370). The doctrine would now seem to have acquired the dignity of a status distinct from its parent action (Rest. Torts, §§ 696, 697, 705; 17 Am.Jur., Drugs & Druggists, 864, § 34), especially in view of its application to parent and child.

The author of the article points out that there should be no reason to distinguish between habit-forming drugs and intoxicating liquors since both have two important characteristics in common: (1) Their use in substantial quantities causes injury to the mind and body; and (2) after reaching a certain point in their use, a person can no longer control his appetite for them. (As to the general pharmacological problem, see The Action of Alcohol on Man [1923], Ernest H. Starling; The Opium Problem [1928], Charles E. Terry and Mildred Pellens; U. S. Treasury Department, Bureau of

Narcotics, Traffic in Opium and Other Dangerous Drugs [1938].)

In the Pratt case, *supra,* the court said: "A careful study of the cases following the principle laid down in *Hoard* v. *Peck, supra,* will show that the reasoning upon which they were based is that there are certain substances which, if used habitually, destroy the volition of the user to such an extent that he has no power to aught but consume them when they are placed before him; that the consumption and the sale of such substances are, therefore, merged and become the act of the vendor; the sale is, therefore, the proximate cause of the loss of consortium, and the consumer cannot, having lost his volition to act, be guilty of contributory negligence. The best known of these substances is opium and its various derivatives, but it is a well-known scientific fact that many other things, under certain circumstances, will produce the same result. Cocaine is an instance among the drugs, and it is equally well established that the excessive use of intoxicating liquor may, and frequently does, have the same effect. We think it would be a narrow and illogical limitation of the rule to hold that because one habit-forming substance is a 'drug' in the technical sense of the term, and another is a 'liquor,' different rules should be applied to the sale and use thereof. In fact, there is no specific holding applying such limitation in any of the recorded cases, and in *Holleman* v. *Harward, supra,* the court intimated strongly that under certain circumstances intoxicating liquor might fall within the same rule as laudanum as a habit-forming substance. Of course, since there is not the same presumption that the use of liquor will eventually cause the loss of volition that there is with a habit-forming drug, it is incumbent upon plaintiff to prove that to the knowledge of defendant such a stage has been reached by the consumer, but if this fact is once established, in all reason and logic the right of action should be the same in one case as in the other. We are satisfied from our examination of the cases that the language of the Restatement, *supra* (Torts, vol. 3, p. 696) 'c. The expression "habit-forming drugs" as used in this section does not include intoxicating liquor,' was not meant as a declaration that the decided cases *exclude* liquors from the rule, for no such cases have been cited to us, but rather is merely a recognition of the fact that the precise issue had not yet been presented to and determined by any court." The court frankly admitted that: "Every requested

application of the principles of the common law to a new set of circumstances is originally without precedent, and some court must be the first one to make the proper application.

"In answer to the second contention (judicial legislation), we are not asked to make a law. We are asked to declare what the common law is and always has been, and a declaration by us that it has always *permitted* such an action, even though none has ever actually been brought, is no more legislation than would be a declaration that it does not.

"So far as the bringing of unwarranted actions is concerned, if the facts do not show the action is justified, we must assume that the trial court and jury will properly apply the law, and we may not refuse to declare it correctly merely because there are some who may attempt to apply it to cases where the facts do not sustain it.

"On a careful review of all the authorities and a consideration of well-known scientific facts, we think that under the rationale of the rule laid down in *Hoard* v. *Peck*, *supra*, and the cases following it, the sale of intoxicating liquors under the circumstances indicated above is subject to the same rule as the sale of what is, in the strict sense of the word, a habit-forming 'drug,' and that under such circumstances an action for the sale of the former should be upheld as allowed by the common law as well as the latter."

In *Swanson* v. *Ball*, 67 S.D. 161 [290 N.W. 482, 483], there was no dramshop act involved. The court there was concerned with facts substantially the same as the ones here under consideration. Plaintiff's husband was alleged to have died after drinking liquor sold to him by defendants who admitted receiving both oral and written notice from plaintiff to refrain from doing so. Defendants appealed from an order overruling their demurrer to plaintiff's complaint. The court, in affirming, said: "We are not impressed with the argument presented in which the appellant has attempted to differentiate between the opium drug in the case of *Moberg* v. *Scott*, *supra* [161 N.W. 998], and the intoxicating liquor in the instant case. This court through its former decisions, which we have just referred to, has quite conclusively established that a complaint such as we are considering states a cause of action. The right of the wife to the consortium of the husband is one of her personal rights and we believe that the allegations of the complaint are sufficient in both statements, as to facts and form, to permit a trial upon the

merits.'' The court also held that the wife had a cause of action ''independent of any specific statute.''

So far as the rationale of the decided cases is concerned—that the consumption and not the sale of the liquor is the proximate cause of the injury received by the third person—it appears clear that under the circumstances of this case, the sale and consumption were so merged as to become one act and under the rule that individuals must be held to have contemplated the natural and probable result of their own acts purposely and intentionally committed it is unrealistic to say that the act of the deceased in drinking the liquor and thereafter becoming belligerent and pugilistic was not a foreseeable consequence of the sale by defendant. (See 23 So.Cal.L.Rev. 420, 421.) This court has held many times that negligence may be the proximate cause of an injury even though the act of a third person intervenes, if a person of ordinary prudence could reasonably anticipate the probability of the third person's intervening conduct (*Richardson* v. *Ham,* 44 Cal.2d 772 [285 P.2d 269]; *Austin* v. *Riverside Portland Cement Co.,* 44 Cal.2d 225 [282 P.2d 69]; *McEvoy* v. *American Pool Corp.,* 32 Cal.2d 295, 299 [195 P.2d 783]; *Mosley* v. *Arden Farms Co.,* 26 Cal.2d 213, 218 [157 P.2d 372, 158 A.L.R. 872]; *Katz* v. *Helbing,* 215 Cal. 449 [10 P.2d 1001], and others).

It appears to me that under the facts alleged by plaintiffs it was an abuse of discretion for the trial court to sustain the defendants' demurrer without leave to amend.

I would, therefore, reverse the judgment.