Argued June 25; affirmed July 7, 1936

# PECK *v.* GERBER ET AL.

(59 P. (2d) 675)

*Frank C. Howell,* of Portland (Wilbur, Beckett, Howell & Oppenheimer, of Portland, on the brief), for appellants.

*L. C. Binford* and *Wendell Gray,* both of Portland (Binford & Weiss, of Portland, on the brief), for respondent.

KELLY, J. At about the hour of 9:30 o'clock p. m. of November 25, 1934, two young men had an altercation in defendants' restaurant. One of them was knocked over and upon plaintiff, who, as a patron of the restaurant, had been seated at a table there, but had arisen from her chair and was in the act of picking up her cloak in order to leave.

The part of the bone in plaintiffs heel called the sustentaculum cali of the os calcis and the bone of her ankle, known as the astragalus, were fractured; and fragments of bone were pulled out of the top of the astragalus and off of the top of the scaphoid.

The defendants were the proprietors of the restaurant, which was known as The Rathskeller. The two young men were patrons of the restaurant.

One of the young men, who engaged in the fisticuffs, was known as Leslie Gordon or Gordon Leslie. For brevity, we will refer to him as Gordon. For several years, he had been a regular patron of The Rathskeller. He was a singer and while patronizing the restaurant

frequently sang at the instance of other patrons. There is nothing to indicate that he was ever an employee.

On the evening in question, after sitting at a table with two young ladies, who accompanied him, and after ordering refreshments for himself and his guests consisting of coffee and sandwiches, some one re-requested him to sing. This he did. Upon returning to the table he had left, he found another young man sitting in the chair which he had occupied before singing. A few words were exchanged, then blows, and plaintiff was injured as stated.

■ There is testimony tending to show that Gordon was hotheaded and belligerent when drinking. That upon one occasion he was requested to leave the room because of his belligerent conduct. The testimony indicates that there was more than one persuader using the power of persuasion upon him at that time.

There is testimony to the effect that Gordon frequently patronized The Rathskeller and that he had had a great many arguments while there. One witness testified that she didn't know that Gordon had absolutely struck any one but he had attempted to do so; and that when he was drinking he was very quarrelsome.

Part of the time defendants were employees there and part of the time they were the proprietors but during all of these occurrences, the testimony indicates, defendants were in such relation to the business that they would have had notice thereof. The special officer employed by defendants to preserve order in the restaurant testified that he was not yet on duty, but, immediately after plaintiff was injured, he made inquiry of the two young ladies who had accompanied Gordon as to what had transpired and upon being informed said to defendant Bell that he was surprised

that Gordon would do such a thing; and defendant Bell replied that it was no surprise to him for the reason that Gordon was hotheaded.

Defendant Bell was asked the purpose of employing a special officer, to which he answered "for the protection of our customers" against "any trouble that might start where beer or alcoholic liquors are served".

The following questions and answers appear in said defendants' cross-examination:

"Q. In other words, do you consider that trouble is liable to start in The Rathskeller while they are drinking beer?
A. Any place.
Q. Any place. And that is why you have a special policeman?
A. For protection."

There is a conflict in the testimony as to when the special officer should have reported for duty. Mr. Bell testified that the officer was supposed to be there at 9:30. The officer himself testified that he did not go on duty until 10. Said defendant also testified that, between 10 p. m. and the ensuing 1 a. m., they served a little food but mostly beer.

There is testimony that Gordon was belligerent and stubborn while drinking.

Defendant Bell testified that at the time of the fight he was not in the room where the trouble occurred; but, being in an adjacent room, he knew that Gordon was there because he heard him singing.

The negligence charged consists of "admitting and inviting to The Rathskeller and permitting to remain there, Leslie Gordon, a person known to the defendants to have violent and disorderly propensities; permitting and allowing the disorderly conduct described herein; and failing to provide an employee or employees to

maintain proper order and to exercise reasonable care for the safety, comfort and entertainment of the guests''.

We are confronted with the question whether reasonable minds would differ upon the question whether the foregoing outline of testimony discloses negligence on defendants' part as charged in the complaint.

The jury must have determined that it was negligent on the part of defendants not to have a special officer or other employee on duty to preserve order while plaintiff was sitting at a table in close proximity to the one at which Gordon was seated or that defendant Bell knew Gordon was liable to conduct himself as he did and knowing that, said defendant was negligent in permitting Gordon to remain after singing.

We are not sitting as jurors and hence are not deciding that defendants were negligent. We are called upon only to determine whether there is substantial testimony in the record tending to support the charge of negligence.

We are constrained to hold that there is such evidence before us.

■ Assignment of error number two challenges the propriety of the following instruction:

''But, if the preponderance of the evidence indicates to you that the place of business was a place where fights and disorderly conduct had occurred, you may draw the inference that it was a place where fights and disorderly conduct were likely to occur, and that the defendants must use every reasonable precaution to protect that plaintiff from an injury arising from such fights and disorderly conduct.''

The complaint alleges that The Rathskeller is a place where wines and beer were on sale. The testimony of defendant Bell, as quoted above, indicates and

experience teaches that in such a place fights and disorderly conduct are likely to occur. The instruction is not beyond the issues and the evidence. The complaint charged negligence in permitting and allowing the disorderly conduct described and failing "to provide an employee or employees to maintain proper order and to exercise reasonable care for the safety, * * * of the guests".What would be negligence in failing to provide an employee or employees to afford safety for guests at such a place as. The Rathskeller would not be considered negligence at a prayer meeting.

In a comparatively recent case, Mr. Justice Rossman announced the basic rule of negligence when he said:

"The required degree of care is always graduated according to the danger attendant upon the activity one is pursuing. The standard does not vary—it is the conduct of an ordinarily prudent person. But such an individual exercises care commensurate with the dangers to be avoided and the likelihood of injury to others." *Sullivan v. Mountain States Power Co.,* 139 Or. 282, 298 (9 P. (2d) 1038).

The same principle applies to assignments numbered three and four. The instructions criticised by these assignments are not outside of the issues and admitted facts. As stated, it is alleged in the complaint and admitted in the answer and by the testimony that defendants were operating a restaurant where intoxicating liquors were dispensed. The complaint alleged failure on the part of defendants to maintain proper order and to exercise reasonable care for the safety of the guests. These criticised instructions told the jury that the standard of care required of defendants was such care as a person of ordinary prudence would have used in the operation of such a business;

that plaintiff had a right to rely upon the belief that the defendants were either present in person or by a responsible, delegated representative keeping a careful lookout that the doings in the house should in all respects be orderly and reasonably safe and that, if defendants failed to observe and employ such care, and that, if the employment thereof might have prevented the injury to plaintiff, such failure would constitute negligence.

Defendants complain of the latter instruction on the ground that the evidence does not show that defendants' place was disorderly, or that any disorder of any nature occurred until the disturbance took place wherein plaintiff was injured. As stated, the testimony tends to show that on a former occasion threatened disorder was prevented by persuading Gordon to leave the room and that there was more than one persuader engaged in so preventing such disorder. More than that, as above quoted, the testimony of one of the defendants discloses that any place selling intoxicants for immediate consumption is potentially a disorderly place unless properly policed and patrolled.

■ The fifth assignment of error is based upon the giving by the trial court of the following instruction:

"If you believe from the evidence that Gordon Leslie did cause the fight in defendants' place of business on the occasion in evidence referred to and that the plaintiff was thereby injured, and if you further believe from the evidence that Gordon Leslie was a person of vicious, vile and disorderly propensities, and that these facts were known or by the exercise of ordinary care could have been known to the defendants or their agents, then it became the duty of the defendants to refuse admission to Gordon Leslie or otherwise control him."

Attention is called to the fact that the complaint alleges merely that Gordon was known to have violent and disorderly propensities, while the word vile is also employed in the foregoing instruction.

To the writer the appearance of the word vile is best accounted for as an instance of idem sonans. The request upon which the instruction in question was based uses the phrase "vicious, violent and disorderly". It is not in any sense a reflection upon the highly proficient reporter, that it sounded to him as it emanated from the eloquent lips of the trial judge as "vicious, vile and disorderly"; but be that as it may, we can understand how this added word might have been detrimental to plaintiff for by its use the court placed burden upon plaintiff not only of showing that Gordon was known to have violent and disorderly propensities but also that he was a person of vile propensities, in order to impress upon defendants the duty of refusing him admission or of otherwise controlling him; but we can not see how the use of the word vile prejudiced defendants.

■ Defendants argue that by this instruction the court plainly told the jury that the defendants were negligent in admitting Gordon and that they were responsible for any disturbance which he might be engaged in whether they had notice of it or not.

We think that this argument is untenable. The duty of refusing Gordon admission is by this instruction clearly premised upon Gordon causing the fight in suit, resultant injury to plaintiff, that Gordon was of vicious, vile and disorderly propensities and that these facts were known, or by the exercise of ordinary care could have been known, to the defendants or their agents.

Moreover, the trial court also instructed as follows:

"If you find that Gordon Leslie was a person of violent and disorderly propensities, that alone would not make the defendant responsible or liable for the plaintiff's alleged injuries. Before you can return a verdict against the defendant you must go further and find the violent and disorderly propensities of Leslie Gordon were such as to make him dangerous as to the safety of others and that such propensities were known or should have been known to the defendants. In other words, two things must concur: You must find that Gordon Leslie was such an individual, and also find that such propensities were known or should have been known to the defendants."

██ Criticism is also offered concerning the allegation of negligence in the complaint, because it does not contain a clause to the effect that Gordon, because of his disorderly propensities, would probably assault one of defendants' guests and that defendants knew that such probable assault would probably occur because of the presence of Gordon. We think that only such notice as would cause an ordinarily prudent person to act is required in order to charge defendant with the duty of so acting, and that after issue joined the allegations of the complaint are sufficient to support the instructions and the verdict. The principles of law applied by the learned judge of the trial court are well recognized.

█ The operator of a restaurant, dispensing intoxicating liquors and furnishing entertainment, is not an insurer of the safety of his guests, but he owes the duty to them to exercise reasonable care to protect them from injury at the hands of a fellow guest or guests: Vol. 5, Thompson's Commentaries on the Law of Negligence, § 6674; *Gurren v. Casperson,* 147 Wash. 257 (265 P. 472).

█ The operator of such a business is guilty of negligence, if he admits to his establishment a person when such operator has notice or knowledge that such a person is of violent and disorderly propensities, and likely to assault or insult his guests : *Rommel v. Schambacher*, 120 Pa. St. 579 (11 Atl. 779, 6 Am. St. Rep. 732) ; *Molloy v. Coletti*, 114 Misc. Rep. 177, (186 N. Y. S. 730) ; *Curran v. Olson*, 88 Minn. 307 (92 N. W. 1124, 60 L. R. A. 733, 97 Am. St. Rep. 517) ; *Mastad v. Swedish Brethren*, 83 Minn. 40 (85 N. W. 913, 53 L. R. A. 803, 85 Am. St. Rep. 446).

█ A guest or patron of such an establishment has a right to rely on the belief that he is in an orderly house, and that the operator, personally or by his delegated representative, is exercising reasonable care to the end that the doings in the house shall be orderly : *Moone v. Smith*, 6 Ga. App. 649 (65 S. E. 712) ; *Beilke v. Carroll*, 51 Wash. 395 (98 P. 1119, 22 L. R. A. (N. S.) 527, 130 Am. St. Rep. 1103).

We are aware of some dissent (*Peter Anderson & Co. v. Diaz*, 77 Ark. 606 (92 S. W. 861, 4 L. R. A. (N. S.) 649, 113 Am. St. Rep. 180)), but the weight of authority and the better reasoning are in accord with the rules above announced.

We find no prejudicial error and for that reason the judgment of the circuit court is affirmed.

CAMPBELL, C. J., and BELT and ROSSMAN, JJ., concur.