Argued January 11, affirmed March 28, 1978

RADKE, *Appellant,*
*v.*
CARPENTER, *Respondent.*

(No. 418-593, SC 25066)

576 P2d 365

Larry N. Sokol, Portland, argued the cause for appellant. With him on the briefs were Franklin, Bennett, Ofelt & Jolles, P.C., Portland.

Edward H. Warren, Portland, argued the cause for respondent. With him on the brief were Donald E. Hershiser, and Hershiser, Mitchell & Warren, Portland.

Before Denecke, Chief Justice, Tongue, and Bryson, Justices, and Richardson, Justice Pro Tempore.

BRYSON, J.

**BRYSON, J.**

Plaintiff brought this action against defendant, a tavern owner, to recover for personal injuries sustained as a result of an altercation which occurred off defendant's premises. The trial court entered a judgment order granting defendant's motion for a directed verdict against plaintiff. Plaintiff appeals.

In reviewing a trial court's action in granting or denying a motion for a directed verdict, we view the evidence in the light most favorable to the plaintiff to determine if there was sufficient evidence to submit the case to the jury. *Turman v. Central Billing Bureau,* 279 Or 443, 445, 568 P2d 1382 (1977); *James v. Carnation Co.,* 278 Or 65, 67, 562 P2d 1192 (1977).

The facts, so viewed, are as follows. Plaintiff and a female companion were playing pool at defendant's tavern when two men, Robert Fiedler and Tom Phillips, entered the premises and confronted plaintiff. Fiedler was angry because earlier that day plaintiff had insulted Fiedler's girl friend. Fiedler picked up a pool ball and tossed it back and forth in a menacing manner. The two men shouted and shoved at each other but didn't come to blows.

The bartender, in charge of the premises, "asked them to leave" and told them to get "out." Fiedler and Phillips left immediately. Plaintiff stayed a few minutes to recover his deposit on the cue ball; he protested having to leave the tavern because he was a regular customer. Plaintiff testified:

> "Q   Now, at that time, upon your departure, did you have any reason to believe that you were going to get in any fight with Phillips or Fiedler either?
>
> "A   Yeah, I had reason to believe it.
>
> "Q   Well, why didn't you remain in the tavern?
>
> "A   I don't know. I just wanted to get out of there with Marjorie."

However, there is no evidence that he communicated this thought to defendant's bartender.

The bartender insisted that plaintiff leave. When plaintiff left with his companion to go to her car, which was parked on the street about 50 to 70 feet from the tavern entrance, he saw Fiedler and Phillips removing something from the car's engine. Plaintiff tried to stop them, and a fight followed in which plaintiff suffered injury. The injury was apparently inflicted by Fiedler, who hit plaintiff in the eye with a pool ball Fiedler had removed from the tavern. One of plaintiff's assailants beat him with a pool cue, also removed from the tavern.

Plaintiff first contends "[t]he trial court erred in directing a verdict in favor of the defendant and against the plaintiff."

The complaint alleged defendant was negligent in one or more of the following particulars:

"1. In serving alcoholic beverages to business invitees, permitting them to become intoxicated.

"2. In ejecting plaintiff and the other two business invitees from the tavern after the other two business invitees had threatened the plaintiff in defendant's premises.

"3. In failing and neglecting to telephone the Multnomah County Sheriff's Office or the Portland Police Department so as to prevent a fight.

"4. In failing and neglecting to prevent removal from the premises of billiard materials which could be used as a weapon.

"5. In failing and neglecting to take any measures to prevent removal of billiard materials from the pool room.

"6. In failing and neglecting to prevent the altercation in question to which plaintiff was injured from occurring.

"7. In failing to provide an employee or employees who would maintain proper order and exercise reasonable care for the safety and comfort of its customers."

We will consider each of these specifications in light of the evidence. Plaintiff withdrew the first specification of negligence at trial. Plaintiff testified:

"Q * * * Was there anyone—was Norine [defendant's bartender] guilty, to your knowledge, while you were in there, of serving either yourself, Fiedler or Phillips, a beer when you were intoxicated?

"A No."

The second and third specifications are based on the theory that the continuation of the fight was foreseeable and that defendant should have taken steps to prevent it. If plaintiff's assailants had attacked him immediately upon leaving the tavern and defendant had reason to know such an attack was impending, then the second and third specifications of negligence would have presented a more difficult question. However, as demonstrated by plaintiff's own testimony, the fight did not happen that way. He testified that when he left the tavern the two men had the hood up and were tinkering with the car:

"A * * * I accosted them right at the corner of that spring building place.

"* * * * *.

"Q Now, just tell us, if you were so concerned about having an altercation with these people, Fiedler and Phillips, why did you go up there at all?

"A Because I wanted to help Marjorie get that coil wire back.

"Q Well, why, if you're concerned about your personal safety, didn't you go back and say, 'I want the police called. They are disturbing my car and I don't want to go near those dangerous people'?

"A I don't really know.

"Q But you walked up there voluntarily. Nobody was pushing you?

"A No, I just thought I could talk them out of the coil wire so I could get out of there.

"Q And you weren't concerned about being embroiled in any fight at that time?

"A I didn't think there would be, no."

Therefore, although defendant's conduct in making plaintiff leave the tavern put him in a position where he could see Fiedler and Phillips tampering with the car, it was plaintiff's own voluntary decision to, in his

words, "accost them," that ultimately led to the fight. This fact distinguishes this case from the cases plaintiff relies on.

For example, in *Yashar v. Yakovac,* 48 NYS2d 128 (NY City Ct 1944), a bartender served liquor to two intoxicated men who menaced the plaintiff. The bartender put the two outside, and knowing they were waiting for plaintiff and over plaintiff's protests put plaintiff outside as well, whereupon the two drunks attacked and knifed plaintiff. Calling the bartender's act "a deliberate act with consequences readily foreseeable," the court affirmed a plaintiff's verdict against the tavern. This case is distinguishable. In *Yashar* the bartender's act caused plaintiff's injury. Here, plaintiff's injury was caused by his decision to "accost" Fiedler and Phillips. Further, defendant could not reasonably have foreseen such conduct by plaintiff.

We conclude that plaintiff was not entitled to recover under his second and third allegations of negligence because those alleged acts were not the cause of his injuries. The same reasoning applies to the fourth and fifth specifications of negligence having to do with defendant's alleged negligent failure to prevent removal of billiard equipment from the premises.

As to specifications six and seven, plaintiff relies on several Oregon cases. In *Whelchel v. Strangways,* 275 Or 297, 550 P2d 1228 (1976), a fight occurred between two patrons in a tavern. There was evidence that three minutes elapsed between the time the fight began and the time plaintiff was struck with a pool cue, which caused plaintiff's injuries. During this time, the defendant, who was the owner and bartender of the tavern, took no steps to stop the fight or to eject the men from the premises. We held that this evidence was sufficient to take the case to the jury.

In *Stachniewicz v. Mar-Cam Corporation,* 259 Or 583, 488 P2d 436 (1971), we held that a tavern

operator who allowed disorderly or boisterous conduct in the tavern, or who permitted any visibly intoxicated person to remain in the tavern, in violation of Oregon Liquor Control Commission regulations, was negligent as a matter of law for allowing such conduct. In *Rosensteil v. Lisdas,* 253 Or 625, 629, 456 P2d 61 (1969), we said:

> "The owner of a restaurant, amusement place, tavern, or inn owes his business guests a duty of ordinary reasonable care to protect them from injury at the hands of other patrons while on the premises. * * *"

*See also Peck v. Gerber,* 154 Or 126, 59 P2d 675, 106 ALR 996 (1936). These cases are all distinguishable. Plaintiff also relies upon *Campbell v. Carpenter,* 279 Or 237, 566 P2d 893 (1977). However, the facts in *Campbell* in no way compare to those in the present case. In this case the tavern owner did not serve liquor that caused any of the participants to be intoxicated.

■ If the fight had occurred in the tavern then plaintiff's cases would apply. However, as discussed above, the fight did not occur in the tavern, but some distance therefrom. This altercation actually occurred because Fiedler and Phillips were taking parts from the car and plaintiff "accosted them" rather than call the police. Thus, plaintiff failed to prove that any of his specifications of negligence were the cause of his injuries and so the trial court did not err in granting a directed verdict.

■ Plaintiff's next assignment of error is that the trial court erred in failing to admit evidence of prior fights and violent acts occurring in the tavern. This was not error as the fight did not occur in the tavern and the evidence was not relevant.

Affirmed.