Argued and submitted December 12, 1980,
reversed and remanded April 27, 1981

FITCH,
*Appellant,*
*v.*
ADLER et al,
*Respondents.*

(No. 42212, CA 17717)

627 P2d 36

Richard D. Beeson, Newport, argued the cause for appellant. With him on the brief was Minor, Yeck & Beeson, P.C., Newport.

Larry A. Brisbee, Hillsboro, argued the cause and filed the brief for respondents.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

**WARREN, J.**

This is an action to recover for personal injuries sustained by plaintiff when she fell from a deck attached to defendants' residence. At the close of plaintiff's evidence, defendants moved for a directed verdict under ORCP 60. The motion was allowed, and plaintiff appeals.

■ In determining whether the motion for directed verdict was properly allowed, we view the evidence and inferences which may be properly drawn therefrom in the light most favorable to the plaintiff. *Radke v. Carpenter,* 281 Or 671, 673, 576 P2d 365 (1978).

On January 19, 1979, plaintiff and a friend were dinner guests at defendants' home, which, though still under construction, had been occupied by defendants for more than two years. The interior floors consisted of particle board and were not covered by the usual wood flooring or carpeting. In many places, the walls were unpanelled and insulation was visible. The condition of the home on January 19, 1979, was essentially unchanged from its condition when plaintiff and her friend had visited defendants approximately six months earlier. At approximately 7:00 p.m., after having a glass of wine in the living room, the parties moved into the dining room for dinner. Dinner was completed at approximately 10:00 p.m. By that time, the dining area had become warm, stuffy and smoky. Mr. Adler arose from the table and opened one side of a pair of French doors located a few feet away from the table, saying that he would let in some fresh air. The parties remained seated at the table for another 15 minutes. Then Mrs. Adler went to the kitchen to make coffee. Mr. Adler and plaintiff arose from the table simultaneously, Mr. Adler walking toward the interior of the house and plaintiff proceeding toward the open French door a few feet away. As she moved toward the door she passed within a few feet of Mr. Adler. Neither plaintiff nor her companion were aware of the condition of the deck or even of the fact that a deck existed beyond the French doors. There had been no discussion during the evening concerning it.

As plaintiff approached the threshold of the door, the light shining from the interior of the home illuminated

approximately three feet of the deck to the right of the door. Beyond that, due to atmospheric conditions and the lack of exterior lighting, the size of the deck could not be observed. Plaintiff assumed, however, that the deck extended to the right some distance, judging by light emanating from windows at eye level to her right. After hesitating at the threshold a few seconds, plaintiff stepped out onto the deck, took two steps to her right to the edge of the light shining onto the deck from the dining area, took a third step into darkness and fell from the deck to the ground below. Although the deck floor had been completed for some time, no railings had been installed. At the hospital, while plaintiff was being given emergency treatment, Mr. Adler commented that he had been concerned that a child might fall from the deck, "but not Wanda."

■　　As a social guest on defendants' premises, plaintiff occupied, with respect to the condition of the premises, the status of a licensee, not an invitee. Defendants' duties toward plaintiff were to avoid wilfully, wantonly or intentionally injuring her, to refrain from active or affirmative negligence and to warn her of any trap or pitfall actually known to the defendants which might be expected to cause plaintiff injury despite her exercise of reasonable care. *Baer v. Van Huffell,* 225 Or 30, 33, 356 P2d 1069 (1960); *Fleck v. Nickerson,* 239 Or 641, 644, 399 P2d 353 (1965).

■　　There is no evidence in this case of wilful, wanton or intentional injury, nor is there evidence of active or affirmative negligence on defendants' part. The failure of defendants to provide adequate outdoor lighting or to provide guardrails amounted to passive negligence only. Plaintiff argues, however, that defendants' violation of the Lincoln County building code requiring guardrails for balconies or porches which are more than 30 inches above grade constitutes negligence *per se, Johnson v. Salem Title Co.,* 246 Or 409, 412, 425 P2d 519 (1967), or at least some evidence of negligence. The label "negligence *per se,*" however, does not give the allegation of fault any special status. The violation of a statute, ordinance or code provision is either active or passive negligence, depending upon the character of the act or omission, not upon whether the duty arises from a common law or legislatively-fixed standard of care. The failure to install guardrails required by the

provisions of the Lincoln County building code, even if it does constitute negligence *per se,* is not actionable in the context of this case because such negligence is nonfeasance, not active or affirmative negligence. *See* Prosser, Law of Torts, § 56 (4th ed 1971).

Plaintiff, however, contends that the absence of guardrails on the deck under the circumstances of darkness constituted a trap or pitfall, imposing upon the host an affirmative duty to warn her of that condition. A trap or concealed danger is one known to the host, but unknown to the guest, which the host should know cannot be avoided by the guest in the exercise of reasonable care. *Fleck v. Nickerson, supra,* 239 Or at 644; *Baer v. Van Huffell, supra,* 225 Or at 33-34. A condition which is open and obvious in daylight may become a trap during hours of darkness. If that is the case, the host has a duty to warn of the condition, if he has reason to believe that his guest will enter the area. *Malmquist v. Leeds,* 245 Minn 130, 71 NW2d 863, 869 (1955). Here the evidence is uncontradicted that defendants knew and appreciated the danger in the condition of the deck as it existed without guardrails. There was evidence that light from the interior of the house illuminated part of the deck. The edge of the deck itself was only six inches beyond the area which the light illuminated. Atmospheric conditions and lack of artifical lighting outside the home made it very difficult from the doorway to determine how far the deck extended or whether it had a guardrail. According to the plaintiff, light coming from windows on the side of the house gave her the deceptive impression that the deck extended to the window.

Defendants rely upon *Baer v. Van Huffell, supra,* to support their contention that the condition did not constitute a trap. In *Baer,* defendants indicated to their social guest that one of two adjacent doors was a door to a lavatory. Plaintiff's decedent selected the wrong door, walked through it and fell down a flight of stairs. The trial court granted a motion for directed verdict, and the Supreme Court affirmed, stating:

"We think it must be conceded that general knowledge informs all reasonable minds that a great many houses are constructed so that there are rooms on different grade

levels; that these different levels are reached by stairways which have doors closing off those stair areas. This general knowledge should warn every guest in the home that such a stairway may exist. Reasonable care, therefore, would require a guest upon opening any door to investigate before stepping across the threshold. Reasonable care and skill would have disclosed to the deceased that the door through which she passed opened into a stairway." 225 Or at 34.

*Baer* is distinguishable. While it may be common knowledge and expectation that doors often lead to stairways, requiring caution in stepping over the threshold, it is also common knowledge and expectation that decks raised substantially above ground level are generally surrounded by guardrails. Having no reason to believe to the contrary, plaintiff was entitled to assume that usual, not unusual, conditions existed. Here, plaintiff did not, as in *Baer,* step over the threshold without observing the level of the floor onto which she stepped. Plaintiff observed that a deck was beyond the threshold and extended some distance into the darkness. If plaintiff should have anticipated any hazard, it was walking into a guardrail, not walking off the edge of the deck.

Defendants also contend that while initially on the premises as a licensee, plaintiff had become a trespasser upon leaving the dining area and stepping out onto the deck. Accordingly, they contend that because plaintiff's injury was not caused by defendants' wilful or wanton negligence, the trial court properly granted defendants' motion for directed verdict. *Hansen v. Cohen et al,* 203 Or 157, 165, 276 P2d 391, 278 P2d 898 (1955).

■ As stated in *Rich v. Tite-Knot Pine Mill,* 245 Or 185, 421 P2d 370 (1966):

"A person who comes on another's premises may be a licensee or invitee for one purpose or part of the premises and not for another. [Citations omitted.] If an invitee, for the purpose which brought him, is encouraged to go to an unusual part of the premises to which the purpose would not usually take him, he remains an invitee. If he goes to such a place with consent but without such encouragement and solely on his own initiative, he is a licensee. If he goes to such a place without encouragement and without consent, he is a trespasser. Prosser, *supra,* 402, § 61.

> " 'The mere fact that a person is invited into a structure and thereby becomes an invitee does not mean that he is an invitee in every part of the building and that he is at liberty to enter wherever he wishes. For example, a person who enters a bank and makes a deposit of money at the window of a teller would discover that his status as invitee had changed to that of trespasser if he attempted to make his way into the teller's cage.' *Dutton v. Donald M. Drake Co.,* 237 Or 419, 425, 391 P2d 761 (1964).

> "It also follows that one who originally enters the premises as a licensee may forfeit his license and become a trespasser if he exceeds its scope. *Hansen v. Cohen, et al, supra,* at 164."

Under the facts of this case, we decline to construe plaintiff's license as restricted to the living and dining room areas of defendants' home. The parties had been seated at the dining room table for approximately three hours; the room had become warm, stuffy and filled with smoke to the extent that Mr. Adler arose from the table and walked the few steps necessary to open the door leading to the deck for the purpose of permitting fresh air to enter the room. When he and his wife left the table, it was foreseeable that plaintiff might also leave the table and venture onto the deck for fresh air. In this social setting, the host's opening of the door to the outside could reasonably be construed by his guests as a willingness on the part of the host that they explore the deck area. When plaintiff walked by Mr. Adler on her way to the deck, no warning was given, nor was she advised to remain in the dining area.

We believe that reasonable minds could conclude that when Mr. Adler opened the door to let in fresh air, that act, without more, constituted an implied invitation for his social guests to remove themselves to the deck. We cannot say that plaintiff exceeded the scope of her license as a matter of law and thus became a trespasser entitled to no warning concerning the condition of the deck.

■ Finally, defendants contend that plaintiff was contributorily negligent and that her negligence exceeded that of defendants as a matter of law, thus barring her recovery. Even if we could say that plaintiff was negligent as a

matter of law in this comparative negligence case, reasonable minds could differ on the degree of her negligence vis-a-vis defendants. "[W]e cannot say that 'it is manifest as a matter of law' that plaintiff's negligence exceeded defendants." *Jordan v. Coos-Curry Electric Co-op,* 267 Or 164, 165, 515 P2d 913, 516 P2d 472 (1973); *Resser v. Boise-Cascade Corporation,* 284 Or 385, 390, 587 P2d 80 (1978).

In summary, there was evidence from which a jury could find that the scope of plaintiff's license as a social guest extended to the deck adjacent to the dining area. The jury could also conclude that the condition was such that it would not be discovered by plaintiff in the exercise of reasonable care. Because we hold that these were factual questions which the jury could reasonably resolve in favor of either party, the trial court erred in granting defendants' motion for a directed verdict.

Reversed and remanded.