Argued and submitted April 10, reversed and
remanded June 1, reconsideration denied July 23,
petition for review denied September 22, 1981 (291 Or 662)

JONES,
*Appellant,*

*v.*

OBERG, dba Reub'N'Stein,
*Respondent.*

(No. A8003-01308, CA 19191)

628 P2d 773

Jean Kerr Maurer, Portland, argued the cause for appellant. With her on the brief was Ernest W. Kissling, and Kissling & Keys, P.C., Portland.

Arminda J. Brown, Portland, argued the cause for respondent. With her on the brief was Vergeer, Roehr & Sweek, Portland.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

**RICHARDSON, P. J.**

Plaintiff brought this civil action to recover damages from defendant for personal injuries allegedly caused by defendant's negligence. Plaintiff was injured as he left a tavern owned and operated by defendant. He appeals a summary judgment entered by the trial court in defendant's favor. The sole issue is whether the pleadings, depositions and affidavits establish that there was no genuine issue of material fact and that defendant was entitled to judgment as a matter of law. ORCP 47C. We reverse and remand.

We review the record in the light most favorable to the party opposing the motion, giving that party the benefit of all reasonable and proper inferences of fact which can be drawn from the pleadings, depositions and affidavits. *Stanfield v. Laccoarce,* 288 Or 659, 665, 607 P2d 177 (1980); *Seeborg v. General Motors Corporation,* 284 Or 695, 699, 588 P2d 1100 (1978); *Uihlein v. Albertson's, Inc.,* 282 Or 631, 634, 580 P2d 1014 (1978); *Forest Grove Brick v. Strickland,* 277 Or 81, 87, 559 P2d 502 (1977).

The sequence of events which led to plaintiff's injuries is undisputed. Plaintiff and two friends were in defendant's tavern in the early morning hours of January 20, 1979. At approximately 2:10 or 2:15 a.m., defendant announced the "last call" for drinks. Immediately thereafter, four to six people entered the tavern and asked to buy beer. Defendant advised them that he had just closed the cash register and was no longer serving beverages. The group became "pushy," and some heated words were exchanged. In the spirit of compromise and to avoid an incident, defendant sold the group one or two six packs of beer "to go" and requested them to leave the premises. The group then left. The incident lasted approximately one minute.

Defendant knew two members of the group by name and the others either by sight or reputation. One man, John Newball, occasionally played on the tavern's foosball team. At one time, Newball had been a regular player and customer but lately had neither been playing on the team nor frequenting the tavern. The other person

defendant knew, Scott Rymer, had been ejected from the tavern approximately one year earlier for causing a disturbance. Rymer had not returned to defendant's tavern prior to the night plaintiff was injured.

Soon after the group left, Newball and at least two other members of the group returned to the tavern. Newball was apparently upset with defendant for not being allowed to play on the foosball team and began to give defendant "quite a tongue lashing" and "a bad time." This confrontation lasted approximately two minutes. Defendant stated that he thought Newball and the others were looking for trouble and acting aggressively, although, prior to this time, defendant had never had any trouble with Newball in the tavern.

During the course of defendant's conversation with Newball, another patron, not personally known to defendant, aggressively confronted Newball and the two men argued. The patron invited Newball outside to fight. At defendant's insistence, both were escorted from the tavern and asked to leave the premises. Immediately after they exited, a fight broke out between them some 10 feet from the tavern's front door. Defendant immediately sent his bartender out to break up the scuffle and to move the people along. The fight was stopped within 10 to 15 seconds, and Newball crossed the street to join a group of unidentified individuals. Defendant stated that he sent the bartender out to stop the fight because he feared that if he became involved, Newball might try to harm him.

During this entire period of time, plaintiff and his friends had been in the tavern's game area, which was separate from the bar area. At defendant's request, plaintiff exited the tavern through the front door just after the fight ended. Prior to leaving, plaintiff had not been aware of any quarreling or loud noise. As he left, however, he noticed loud voices, yelling and people in the street. Plaintiff took five steps out the front door, turned to observe the commotion and was struck in the face and eye by a flying beer bottle. Defendant, who was standing in the tavern doorway, and his bartender immediately brought plaintiff back into the tavern, gave him first aid and summoned an ambulance. Defendant stated that he did not go outside,

because he was afraid something might happen. He further stated that he had asked someone in the tavern to telephone the police, but that he neither asked plaintiff to wait in the tavern until the police arrived nor warned plaintiff not to go outside. No one was able to identify the individual who threw the beer bottle that struck plaintiff.

Plaintiff alleged defendant was negligent in:

"1)  Permitting disorderly conduct on the premises;

"2)  In failing to direct persons to leave the premises or remove them from the same when they threatened violence;

"3)  In failing and neglecting to telephone the Portland Police Department when the defendant knew or in the exercise of reasonable care should have known of the potential violence and the threat to customers;

"4)  In actively involving himself in an altercation when he knew [or] in the exercise of reasonable care should have known of the danger to customers;

"5)  In failing to heed warnings of violence and take appropriate action to protect customers and plaintiff;

"6)  In failing to provide an employee or employees who would maintain proper order and exercise reasonable care for the safety and comfort of its customers;

"7)  In serving alcoholic beverages to business invitees who were visibly intoxicated."

■     The owner of a tavern, restaurant, amusement place, or inn owes his business guests a duty of ordinary reasonable care to protect them from injury at the hands of other patrons. *Radke v. Carpenter,* 281 Or 671, 677, 576 P2d 365 (1978); *Rosensteil v. Lisdas,* 253 Or 625, 629, 456 P2d 61 (1969); *Peck v. Gerber,* 154 Or 126, 59 P2d 675, 106 ALR 996 (1936). As stated in Restatement (Second) of Torts § 344 (1965), adopted in *Welchel v. Strangways,* 275 Or 297, 304, 550 P2d 1228 (1976):

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

"(a)  discover that such acts are being done or are likely to be done, or

"(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

Comment f is particularly applicable here:

"Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection."

The Supreme Court has previously considered the liability of tavern owners for injuries suffered by their patrons. Though no case is directly on point, we briefly discuss each, for all are of some assistance in deciding the issue presented in this appeal.

In *Peck v. Gerber, supra,* plaintiff was a patron in defendant's tavern. She was injured in a fight between two other patrons. Defendant appealed from a jury verdict for plaintiff. The Supreme Court held that there was sufficient evidence to support the verdict. Specifically, the court pointed to the fact that defendant admitted a person to the tavern with knowledge that he had a propensity to become disorderly and assaultive when drinking. The court stated that the jury could find such conduct by the owner of a tavern constituted negligence.

In *Stachniewicz v. Mar-Cam Corporation,* 259 Or 583, 488 P2d 436 (1971), *overruled in part on other grounds, Davis v. Billy's Con-Teena, Inc.,* 284 Or 351, 587 P2d 75 (1978), plaintiff was injured during a brawl in defendant's tavern. In that case, a fight broke out between two groups, one of which plaintiff was seated with. After a short melee, someone said the police were being called, and the aggressors fled out the back door pursued by a member of plaintiff's group. Plaintiff was later found lying in the doorway

with head injuries. The court affirmed a jury verdict for plaintiff, noting that defendant was negligent as a matter of law for allowing conduct in violation of liquor control regulations. The court also noted that although there was no direct evidence of how plaintiff was injured, the jury could infer he had been struck outside the tavern by one of the patrons involved in the earlier fight.

In *Welchel v. Strangways, supra,* a jury found defendant liable for injuries suffered by plaintiff in a fight in defendant's tavern. The entire incident occurred in a span of approximately three minutes. During that period, defendant did nothing to stop the combatants, eject them, or prevent them from arming themselves with pool cues found in the tavern. The court stated that the jury could reasonably have found the defendant negligent if it found that there was sufficient time for defendant to take action to stop the fight, eject the fighters or prevent the use of weapons. The court held those questions were for the jury's consideration and, therefore, that the trial court did not err in denying defendant's motion for a directed verdict.

Finally, in *Radke v. Carpenter, supra,* plaintiff sued a tavern owner for injuries he suffered in a fight with two patrons outside defendant's premises. Plaintiff appealed the trial court's decision to grant defendant's directed verdict. On appeal, the Supreme Court affirmed. Plaintiff admitted he accosted two men in the street outside defendant's tavern, following a confrontation with the men inside. On the basis of such evidence, the court stated that plaintiff had failed to prove defendant caused his injuries, *i.e.,* the factual and legal cause of plaintiff's injuries were his own conduct in entering the affray. Therefore, the court held that the trial court appropriately granted defendant's motion.

Based on the above authorities, we conclude that plaintiff was entitled to a determination by a trier of fact. The issue of negligence is ordinarily a question of fact to be decided by the jury. *Hamilton v. State,* 42 Or App 821, 828, 601 P2d 882 (1979); *Oregon Auto. Ins. Co. v. Fitzwater,* 271 Or 249, 531 P2d 894 (1975). The court's function is not to decide whether, if it were the trier of fact, it would conclude defendant was not negligent. Rather, the court is merely to

determine whether *all* reasonable minds would necessarily conclude that defendant was not negligent. *Coffey v. Hilands,* 42 Or App 193, 197, 600 P2d 466 (1979). Put another way, summary judgment in a negligence action is appropriate only where, from the facts, reasonable persons could draw but one inference and that inference supports the conclusion that defendant was not negligent, or if he was guilty of negligence, it was not the cause of plaintiff's injury. *James v. Carnation Co.,* 278 Or 65, 562 P2d 1192 (1977). Thus, the court should withdraw the issue only if it can say that the defendant's conduct clearly falls either above or below the community's standard of reasonable conduct. *E.g., Kirtland v. Davis,* 276 Or 613, 555 P2d 1262 (1976); *Stewart v. Jefferson Plywood Co.,* 255 Or 603, 469 P2d 783 (1970).

We conclude that there is sufficient evidence from which a trier of fact could conclude that defendant was negligent. Defendant owed a duty to plaintiff to exercise reasonable care to protect him from injury while he was on defendant's premises. That duty includes not requiring plaintiff to leave the safety of the tavern when there is a foreseeable risk of injury from patrons who have just left. *See. e.g., Yashar v. Yakovac,* 48 NYS2d 128 (1944). From the evidence presented by both parties in conjunction with the motion for summary judgment, a jury could fairly infer that defendant was aware the crowd outside the tavern was unruly, aggressive and confrontive and included patrons who had just previously exhibited those tendencies inside the tavern. A jury could infer that there was a reasonably foreseeable risk of injury to anyone leaving the tavern, and a jury could find defendant was negligent in requiring plaintiff to leave the tavern in the face of a foreseeable risk of injury and in not allowing him to remain in the tavern until the police arrived to disperse the crowd.

We conclude there is a disputed issue of fact regarding defendant's negligence and that it was error to grant defendant's motion for summary judgment.

Reversed and remanded.